**UNITED STATES v. SCHNEIDER-MAN et al.**

**Cr. A. No. 22131.**

United States District Court
S. D. California, Central Division.

May 6, 1952.

See also, 104 F.Supp. 405.

Walter S. Binns, U. S. Atty., Norman Neukom, Ray H. Kinnison, Asst. U. S. Attys., Los Angeles, Cal., Lawrence K. Bailey, Sp. Asst. to the Atty. Gen., for plaintiff.

Ben Margolis, Los Angeles, Cal., for defendants Oleta O'Connor Yates and Albert Jason Lima.

Norman Leonard, San Francisco, Cal., for defendants Loretta Starvus Stack, Ernest Otto Fox, also known as Ernest Otto

Fuchs, and Frank Carlson, also known as Solomon Szkolnick.

Leo A. Branton, Jr., Los Angeles, Cal., for defendants Henry Steinberg, Ben Dobbs, also known as Benjamin Isgur, and Carl Rude Lambert.

A. L. Wirin, Los Angeles, Cal., for defendants Al Richmond, also known as Abraham Richman, Rose Chernin Kusnitz, and Frank Efroim Spector.

Alexander H. Schullman, Los Angeles, Cal., for defendants Philip Marshall Connelly and Dorothy Healey Connelly, charged as Dorothy Rosenblum Healey.

MATHES, District Judge.

Defendants are on trial by jury under an indictment charging conspiracy, 18 U.S.C. § 371, to commit offenses against the United States prohibited by the Smith Act, 54 Stat. 670, Act June 28, 1940, 18 U.S.C.(1946 ed.) § 10, 18 U.S.C.(1948 ed.) § 2385, "by * * organizing and helping to organize, as the Communist Party of the United States of America a * * * group of persons who advocate and teach the duty and necessity of overthrowing the Government of the United States by force and violence * * *."

One of the witnesses for the Government has testified on direct examination that he became a member of the Communist Party at Milwaukee, Wisconsin, where he engaged in various Communist Party activities and made written reports of such events to agents of the Federal Bureau of Investigation. Three of the reports relate to Communist Party gatherings concerning which the witness has testified in response to questions put by prosecution counsel. Defendants now move for an order directing the Government to produce these three reports for inspection and use by the defense upon cross-examination of the witness.

The United States Attorney opposes the motion to produce upon the ground that such documents "are to be regarded as confidential" by virtue of regulations designated as "Department of Justice Order No. 3229," * issued by the Attorney General

---

* "Order 3229
"Disclosure or Use of Confidential
Records and Information
"May 2, 1939.
"Pursuant to authority vested in me by R.S. 161 (U.S.Code, Title 5, section 22), *It is hereby ordered:*
"All official files, documents, records and information in the offices of the Department of Justice, including the several offices of United States Attorneys, Federal Bureau of Investigation, United States Marshals, and Federal penal and correctional institutions, or in the custody or control of any officer or employee of the Department of Justice, are to be regarded as confidential. No officer or employee may permit the disclosure or use of the same for any purpose other than for the performance of his official duties, except in the discretion of the Attorney General, The Assistant to the Attorney General, or an Assistant Attorney General acting for him.
"Whenever a subpoena *duces tecum* is served to produce any of such files, documents, records or information, the officer or employee on whom such subpoena is served, unless otherwise expressly directed by the Attorney General, will appear in court in answer thereto and respectfully decline to produce the records specified therein, on the ground that the disclosure of such records is prohibited by this regulation.
"Frank Murphy,
"The Attorney General."
28 C.F.R. (1946 Supp.) § 51.71, 11 Fed. Reg. 4920 (1946); see 44 U.S.C. § 307.
"Order No. 3229
"Supplement No. 2
"June 6, 1947.
"To All United States Attorneys
Procedure To Be Followed Upon Receiving A
Subpoena Duces Tecum
"Whenever an officer or employee of the Department is served with a subpoena duces tecum to produce any official files, documents, records or information he should at once inform his superior officer of the requirement of the subpoena and ask for instructions from the Attorney General. If, in the opinion of the Attorney General, circumstances or conditions make it necessary to decline in the interest of public policy to furnish the information, the officer or employee on whom the subpoena is served will appear in court in answer thereto and courteously state to the court that he has consulted the Department of Justice and is acting in accordance with instructions of the Attorney General in refusing to produce the records. The officer or employee should bring with him a cer-

under authorization of 5 U.S.C.A. § 22 which provides in part that: "The head of each department is authorized to prescribe regulations, not inconsistent with law, for the government of his department * * * and the custody, use, and preservation of the records, papers, and property appertaining to it."

██ The regulations relied upon are a part of "that body of public records of which the courts take judicial notice." Caha v. United States, 1894, 152 U.S. 211, 222, 14 S.Ct. 513, 517, 38 L.Ed. 415; 44 U.S.C.A. § 307. And having been held to constitute a valid exercise by the Attorney General of his authority under 5 U.S.C.A. § 22, Touhy v. Ragen, 1951, 340 U.S. 462, 463–464, note 1, 468–469, 71 S.Ct. 416, 95 L.Ed. 417, the regulations "have the force of law." Ex parte Reed, 1879, 100 U.S. 13, 22, 25 L.Ed. 538; Boske v. Comingore, 1900, 177 U.S. 459, 469, 20 S.Ct. 701, 44 L.Ed. 846; Ex parte Sackett, 9 Cir., 1935, 74 F.2d 922.

Exercising the discretion reserved to him in the regulations, the Attorney General,

speaking through the United States Attorney at bar, takes the position that the Government cannot be required to produce for use by the defense "confidential" documents such as the three reports in question here.

The court has ordered the reports delivered under seal to the Clerk for inspection by the judge *in camera* to determine whether the documents have sufficient evidentiary value in any event to warrant disclosure to the defense. The Attorney General has complied with the order, and the reports have been marked as exhibits numbered for identification 729, 730 and 731, to be kept sealed pending further order of court. Cf. United States v. De Normand, 2 Cir., 1945, 149 F.2d 622, 625, certiorari denied, 1945, 326 U.S. 756, 66 S.Ct. 89, 90 L.Ed. 454, id. 1947, 330 U.S. 822, 67 S.Ct. 769, 91 L.Ed. 1272; United States v. Cohen, 2 Cir., 1945, 148 F.2d 94, certiorari denied, 1945, 325 U.S. 852, 65 S.Ct. 1087, 89 L.Ed. 1972; United States v. Ebeling, 2 Cir., 1944, 146 F.2d 254, 257; United States v. Schneiderman, S.D.Cal., 1952, 104 F.Supp. 405.

It is urged in support of the pending motion that, notwithstanding the regulations

tified copy of Order No. 3229, prohibiting the unauthorized disclosure of official records, since the court does not take judicial notice of an intra-departmental order of this sort which is not published. The United States Attorney should be informed of the exact time of the subpoenaed person's appearance in court and be notified at once if there is any difficulty about persuading the court to accept the certified copy of the order as an answer to the demand to produce the records.

"It is important that there should be no appearance of arbitrary refusal to comply with the subpoena and that every respect should be paid to the court's order. Therefore, the officer or employee should, unless directed to the contrary by the Attorney General, bring with him the records and documents which are called for by the supoena even though the Department takes the position that it is not necessary to produce them. Thus, a subpoena is complied with, although a reason is offered for not actually submitting the documents requested.

"It is not necessary to produce the original document; copies of official records, removal of which from the Depart-

ment's own files would cause great inconvenience, are acceptable in response to a subpoena. If a subpoena is so vague and general in its terms that it would require the production of all the files with relation to a given matter, there should be a request for a more specific statement as to what is required. It is not necessary to bring the required documents into the court room and on the witness stand when it is the intention of the officer or employee to comply with the subpoena by submitting the regulation of the Department (Order No. 3229) and explaining that he is not permitted to show the files. If questioned, the officer or employee should state that the material is at hand and can be submitted to the court for determination as to its materiality to the case and whether in the best public interests the information should be disclosed. The records should be kept in the United States Attorney's office or some similar place of safe-keeping near the court room. Under no circumstances should the name of any confidential informant be divulged.

"Tom C. Clark,
"Attorney General.
Pike & Fischer, Administrative Law (2d Series), Dept. of Justice 1.

of the Attorney General, defendants are entitled as of right to inspect the "F. B. I. reports" under authority of Bowman Dairy Co. v. United States, 1951, 341 U.S. 214, 71 S.Ct. 675, 95 L.Ed. 879. On the other side the Attorney General contends that he is entitled as of right to withhold production and inspection and use of the reports under authority of the regulations.

■ In my opinion neither contention is sound. The matter is one which *ex necessitate* must rest within the discretion of the trial court. See Crosby v. Pacific S. S. Lines, 9 Cir., 1943, 133 F.2d 470, 475, certiorari denied, 1943, 319 U.S. 752, 63 S.Ct. 1166, 87 L.Ed. 1706; Shores v. United States, 8 Cir., 1949, 174 F.2d 838, 844–845; United States v. Schiller, 2 Cir., 1941, 187 F.2d 572, 575–576; United States v. Schneiderman, supra, 104 F.Supp. at page 408; Wigmore, Evidence, § 2379 (3d ed. 1940).

■ If a document material to the defense is of such a nature that the confidential information which it contains may be excised or by other means withheld from public disclosure without impairing the evidentiary value of the writing, the trial court will exercise discretionary powers to the end that the competing interests of both Government and defense may be satisfied. See United States v. Burr, C. C.Va., 1807, 25 Fed.Cas. 187, 190–193, No. 14694.

■ Where, however, the nature of the document or the character of its contents is such that the confidential information therein contained cannot fairly be withheld without diminishing the possible evidentiary value of the writing to the defense, then the court must determine in the exercise of discretion whether, notwithstanding the confidential information, the accused should be permitted to compel production of the document for use as evidence on behalf of the defense.

In United States v. Burr, supra, C.C.Va., 1807, 25 Fed.Cas. 187, 192, Id. 25 Fed. Cas. 30, No. 14692d, Mr. Chief Justice Marshall sat as Circuit Justice upon the trials of former Vice-President Aaron Burr charged with treason and high misdemeanor. The defense moved the court for an order directing issuance of a subpoena *duces tecum* to compel production of a letter then in the custody of the President, Thomas Jefferson.

The subpoena was awarded and, upon motion of the defense "that the cause should be continued until the letter should be produced," the venerable Chief Justice observed that "it is a very serious thing, if such letter should contain any information material to the defence, to withhold from the accused the power of making use of it. It is a very serious thing to proceed to trial under such circumstances. * * * The only ground laid for the court to act upon is the affidavit of the accused; and from that the court is induced to order that the paper be produced * * *. In regard to the secrecy of these parts which it is stated are improper to give out to the world, the court will take any order that may be necessary. I do not think that the accused ought to be prohibited from seeing the letter; but, if it should be thought proper, I will order that no copy of it be taken for public exhibition, and that no use shall be made of it but what is necessarily attached to the case. After the accused has seen it, it will yet be a question whether it shall go to the jury or not. That question cannot be decided now, because the court cannot say whether those particular passages are of the nature which are specified. All that the court can do is to order that no copy shall be taken; and if it is necessary to debate it in public, those who take notes may be directed not to insert any part of the arguments on that subject."

■ The court's discretionary power to compel production of a document in the custody of a government agency must be exercised in the light of the requirement of the Sixth Amendment that: "In all criminal prosecutions, the accused shall enjoy the right * * * to have compulsory process for obtaining witnesses in his favor * * *." [U.S.Const. Amend. VI.] This constitutional mandate extends to documentary as well as oral evidence, United States v. Burr, supra, 25 Fed.Cas. at page 30, 35; see also Wilson v. United States, 1911, 221 U.S. 361, 372, 31 S.Ct. 538, 55

L.Ed. 771; 8 Wigmore, Evidence, §§ 2191, 2193, 2200 (3d ed. 1940); 3 Wharton, Criminal Evidence, §§ 1105, 1106 (11th ed. 1935).

■ Proper exercise of judicial discretion in determining whether to compel production requires in every case that any public policy militating against public disclosure of the document be weighed against the interest of the accused in having the document for use in making a defense to the charge. See Langnes v. Green, 1931, 282 U.S. 531, 541, 51 S.Ct. 243, 75 L.Ed. 520. This involves a balancing of the inconvenience of public disclosure against the inconvenience of making a defense without the document. Cf. Shores v. United States, supra, 8 Cir., 174 F.2d at pages 844–845. The latter factor is to be measured largely by an appraisal of the probative or evidentiary value of the document —what possible use the defense could make of it for impeachment or other evidentiary purposes.

■ If the possible evidentiary value of a document to the defense is clearly negligible, the trial court might well be prompted to hold that the interest of the accused in the use of the writing as evidence is outweighed by some public policy, such as that which favors protection from disclosure of the identity of an informer to law enforcement officials, cf. Scher v. United States, 1938, 305 U.S. 251, 59 S.Ct. 174, 83 L.Ed. 151, or that which favors protection of information affecting national security, cf. Zimmerman v. Poindexter, D.C.Hawaii, 74 F.Supp. 933, and other "secrets of State." See 8 Wigmore, Evidence, §§ 2367–2378a (3d ed. 1940).

■ If, on the other hand, the possible evidentiary value is such that use of the document may fairly be considered "essential to the defense," the Government should be compelled to produce it. Scher v. United States, supra, 305 U.S. at page 254, 59 S.Ct. 174, 83 L.Ed. 151; United States v. Coplon, 2 Cir., 1950, 185 F.2d 629, 638–639, certiorari denied, 1952, 342 U.S. 920, 72 S.Ct. 362; United States v. Grayson, 2 Cir., 1948, 166 F.2d 863, 870; Sorrentino v. United States, 9 Cir., 1947, 163 F.2d 627; Wilson v. United States, 3 Cir., 1932, 59 F.2d 390, 392.

■ Whenever the court is called upon to determine in the course of trial whether competent evidence, which appears relevant and material to the proof of some ultimate or evidentiary fact, will be "essential to the defense" in a criminal case, justice requires that doubt be weighed in favor of the defense. How essential the evidence may turn out to be raises a mere question of degree. If competent and relevant, and if material to any degree not clearly *de minimis*, both reason and policy advocate that the defense should be entitled to compel production of the evidence in fulfillment of the assurance of the Sixth Amendment. Cf. United States v. De Normand, supra, 149 F.2d at pages 625–626; United States v. Cohen, supra, 148 F.2d at page 94; United States v. Simonds, 2 Cir., 1945, 148 F.2d 177, 179.

To borrow again the words of Mr. Chief Justice Marshall in United States v. Burr, supra, 25 Fed.Cas. at page 191: "The question will recur, is it really material to his defence? The only evidence that can be received on this point is from the party himself, and he has made his affidavit to its materiality. But that is said to be insufficient; and why? Because the averment is, that the letter 'may be material' in the defence. Until the course of the prosecution shall be fully developed, it may not be in the power of the accused to make a more positive averment. The importance of the letter to the defence, may depend on the testimony adduced by the prosecutor. * * * It is objected that the particular passages of the letter which are required are not pointed out. But how can this be done while the letter itself is withheld? Or how can their applicability be shown without requiring the accused prematurely to disclose his defence? * * * Let it be supposed that the letter may not contain anything respecting the person now before the court. Still it may respect a witness material in the case, and become important by bearing on his testimony. Different representations may have been made by that witness, or his conduct may have been such as to affect his testimony. In

various modes a paper may bear upon the case, although before the case be opened its particular application cannot be perceived by the judge."

In the case at bar defendants urge that the reports should be held "essential to the defense" because the witness allegedly made use of the documents to refresh recollection prior to his appearance on the witness stand. The court finds however that the witness did not see the reports after sending them to the Federal Bureau of Investigation long prior to the trial, and did not make use of them for the purpose of refreshing recollection either in or out of court. See Goldman v. United States, 1942, 316 U.S. 129, 133, 62 S.Ct. 993, 86 L.Ed. 1322; United States v. Rappy, 2 Cir., 1946, 157 F.2d 964, 967–968, certiorari denied, 1947, 329 U.S. 806, 67 S.Ct. 501, 91 L.Ed. 688; Little v. United States, 8 Cir., 1937, 93 F.2d 401, 406, certiorari denied, 1938, 303 U.S. 644, 58 S.Ct. 643, 82 L.Ed. 1105; Mullaney v. United States, 9 Cir., 1936, 82 F.2d 638, 643; Lennon v. United States, 8 Cir., 1927, 20 F.2d 490, 494.

In considering the motion at bar I have examined *in camera* the three reports in question and find that although their possible evidentiary value to the defense appears to be slight indeed, it cannot be said that the documents are not to some degree "essential to the defense."

The Government nonetheless presses the contention that disclosure of one of the reports in particular [Exhibit 731] would reveal the identity of one or more confidential informants and so contravene the public policy which encourages private citizens to furnish public officials with information relating to violations of law. 8 Wigmore, Evidence, § 2374 (3d ed. 1940).

This sound public policy favors treatment of such information, and more particularly the identity of an informant, as confidential and privileged. Vogel v. Gruaz, 1884, 110 U.S. 311, 315–316, 4 S.Ct. 12, 28 L.Ed. 158; United States v. Li Fat Tong, 2 Cir., 1946, 152 F.2d 650, 652. As declared by the Supreme Court: "It is the duty and the right * * * of every citizen, to assist in prosecuting, and in securing the punishment of, any breach of the peace of the United States. * * * It is likewise his right and his duty to communicate to the executive officers any information which he has of the commission of an offence against those laws; and such information, given by a private citizen, is a privileged and confidential communication for which no action of libel or slander will lie, and the disclosure of which cannot be compelled without the assent of the government." In re Quarles and Butler, 1895, 158 U.S. 532, 535–536, 15 S.Ct. 959, 960, 39 L.Ed. 1080.

The only confidential informants whose identity might be revealed through public disclosure of the reports sought by the defense at bar are those asserted by the witness to have attended Communist Party gatherings. Yet on direct examination the witness himself was asked by the Government to name the persons present. Presumably if the witness' memory served him, any confidential informants present have already been named. If not, the Government's interrogation of the witness as to the event must be held a waiver of the right to invoke the public policy favoring protection from disclosure of the identity of any informant who may have been among persons present. Cf. Sorrentino v. United States, supra, 163 F.2d at page 627; Wilson v. United States, supra, 59 F.2d at page 390; United States v. Schneiderman, supra, 104 F.Supp. at page 405.

As the court put it in Wilson v. United States, supra, 59 F.2d at pages 391–392: "When the witness has been called by the United States, the trial court may modify the general doctrine by imposing the terms that consent to the disclosure be given or the witness be withdrawn and his testimony struck out as incomplete. * * * A trial court must dispose of the cause before it. If what is asked is useful evidence to vindicate the innocence of the accused or lessen the risk of false testimony or is essential to the proper disposition of the case, disclosure will be compelled."

The problem remaining is whether, by virtue of the authority of "Department of Justice Order No. 3229" alone, the Attorney General is entitled to have withheld from public disclosure government papers under

his charge which appear to have some possible evidentiary value to the defense.

To quote Mr. Chief Justice Marshall further: "If it be apparent that the papers are irrelative to the case, or that for state reasons, they cannot be introduced into the defence, the subpoena *duces tecum* would be useless. * * * if they may be important in the defence, if they may be safely read at the trial, would it not be a blot in the page which records the judicial proceedings of this country, if, in a case of such serious import as this, the accused should be denied the use of them? * * * That there may be matter, the production of which the court would not require, is certain; but * * * that the accused ought, in some form, to have the benefit of it, if it were really essential to his defence, is a position which the court would very reluctantly deny." United States v. Burr, supra, 25 Fed.Cas. at pages 35, 37.

It is unnecessary however to reach the constitutional issue as to the extent of the authority of the Attorney General under the regulations, see Touhy v. Ragen, supra, 340 U. S. at page 469, 71 S.Ct. 416, 95 L.Ed. 417, since the question arises at the outset whether the Attorney General may not have waived any privilege of withholding the reports.

As Judge Learned Hand observed in United States v. Andolschek, 2 Cir., 1944, 142 F.2d 503, 506: "While we must accept it as lawful for a department of the government to suppress documents, even when they will help determine controversies between third persons, we cannot agree that this should include their suppression in a criminal prosecution, founded upon those very dealings to which the documents relate, and whose criminality they will, or may tend to exculpate. So far as they directly touch the criminal dealings, the prosecution necessarily ends any confidential character the documents may possess; it must be conducted in the open, and will lay bare their subject matter. The government must choose; either it must leave the transactions in the obscurity from which a trial will draw them, or it must expose them fully. Nor does it seem to us possible to draw any line between documents whose contents bear directly upon the criminal transactions, and those which may be only indirectly relevant. Not only would such a distinction be extremely difficult to apply in practice, but the same reasons which forbid suppression in one case forbid it in the other, though not, perhaps, quite so imperatively." See also United States v. Krulewitch, 2 Cir., 1944, 145 F.2d 76, 78–79, 156 A.L.R. 337; United States v. Beekman, 2 Cir., 1946, 155 F.2d 580, 584.

To paraphrase from the opinion in United States v. Coplon, supra, 185 F.2d at page 638: When the Government chooses to prosecute an individual for crime, it is not free to deny him the right to meet the charge against him by introducing relevant documents which the Government might otherwise claim to be privileged from public disclosure. And whenever the Government's claim of privilege conflicts with the right of the accused "to have compulsory process for obtaining witnesses [and other evidence] in his favor," U.S.Const.Amend. VI, the Attorney General must decide whether the public prejudice of allowing the crime to go unpunished is greater than that attendant upon the possible disclosure of "secrets of State" and other confidential information in the Government's possession, which might be relevant to the defense. Cf. United States v. Burr, supra, 25 Fed.Cas. at pages 192–193.

The Government has made no suggestion that public policy against disclosure is sufficiently strong to warrant discontinuance of the prosecution or possible withdrawal of the witness and the striking of his testimony thus far given. Indeed, the Government in effect concedes that no "secrets of State" or other confidential information of importance is here involved.

■ Accordingly, since the prosecution at bar, conducted under the supervision of the Attorney General [28 U.S.C. § 507(b)], has adduced evidence "touching the subject matter communicated" in the reports, it must be held that any privilege of withholding from inspection and use by the defense of sealed exhibits 729, 730 and 731 under authority of "Department of Justice Order No. 3229" has been waived. See

739

Touhy v. Ragen, supra, 340, U.S. at pages 468, 469, 472–473, 71 S.Ct. 416, 95 L.Ed. 417.

In all events, the Attorney General—no less than the United States Attorney—labors in every criminal prosecution under the solemn duty *ex mero motu* to see that "justice shall be done." Cf. Berger v. United States, 1935, 295 U.S. 78, 88–89, 55 S.Ct. 629, 633, 79 L.Ed. 1314. To that end he cannot properly withhold from the court evidence essential to proper disposition of the case, including *a fortiori* any evidence which may be material to the defense of the accused. See Canon 22, Canons of Professional Ethics, 62 A.B.A.Rep. 1112–1113 (1937).

Accordingly, defendants' motion to compel production of the reports for inspection and use of the defense upon cross-examination of the witness is granted, and the Clerk is ordered to unseal the documents heretofore marked for identification as exhibits 729, 730 and 731.