**FRYER v. UNITED STATES.**
No. 11564.

United States Court of Appeals
District of Columbia Circuit.

Argued May 20, 1953.

Decided July 7, 1953.
Writ of Certiorari Denied
Nov. 16, 1953.

See 74 S.Ct. 135.

Messrs. Albert J. Ahern, Jr., and James J. Laughlin, Washington, D. C., for appellant.

Mr. Lewis A. Carroll, Asst. U. S. Atty., Washington, D. C., with whom Messrs. Leo A. Rover, U. S. Atty., William S. McKinley, Asst. U. S. Atty., and William R. Glendon, Asst. U. S. Atty. at time of argument, Washington D. C., were on the brief, for appellee. Messrs. Charles M. Irelan, U. S. Atty. at the time the record was filed, Joseph M. Howard, Asst. U. S. Atty. at the time the record was filed, and William J. Peck, Asst. U. S. Atty., Washington, D. C., also entered appearances for appellee.

Before EDGERTON, WILBUR K. MILLER and BAZELON, Circuit Judges.

BAZELON, Circuit Judge.

Appellant was charged with first degree murder [1] and convicted of second degree murder.[2] He concentrates his appeal on two allegations of error, namely, (1) the court's denial of his motion under Rule 17(c), Federal Rules of Criminal Procedure, 18 U.S.C.A., for leave to inspect in advance of trial certain papers in possession of the Government; and (2) the court's failure properly to instruct the jury on the difference between second degree murder and manslaughter.

At issue under the first allegation is whether "statements made by the defendant" and "statements volunteered to the Government by witnesses or third parties relating to this case" are within the reach of Rule 17(c)'s pre-trial inspection provision. Appellant concedes that the trial court did not err in holding these items outside the scope of Rule 16's discovery procedure.[3] But he contends

---

1. 22 D.C.Code § 2401 (1951).
2. 22 D.C.Code § 2403 (1951).

3. Appellant also concedes that the court did not err in refusing to permit inspec-

that it was error for the court to quash the subpoena duces tecum by which they were sought under Rule 17(c). That Rule provides:

"A subpoena may also command the person to whom it is directed to produce the books, papers, documents or other objects designated therein. The court on motion made promptly may quash or modify the subpoena if compliance would be unreasonable or oppressive. The court may direct that books, papers, documents or objects designated in the subpoena be produced before the court at a time prior to the trial or prior to the time when they are to be offered in evidence and may upon their production permit the books, papers, documents or objects or portions thereof to be inspected by the parties and their attorneys."

Somewhat conflicting statements regarding the scope of Rule 17(c) were made by the Supreme Court in Bowman Dairy Co. v. United States.[4] On the one hand, the Court said, "It was not intended by Rule 16 to give a limited right of discovery, and then by Rule 17 to give a right of discovery in the broadest terms. * * * Rule 17(c) was not intended to provide an additional means of discovery. Its chief innovation was to expedite the trial by providing a time and place *before* trial for the inspec-

tion of the subpoenaed material."[5] On the other hand, the Court said, "the plain words of the Rule are not to be ignored. They must be given their ordinary meaning to carry out the purpose of establishing a more liberal policy for the production, inspection and use of materials at the trial."[6] "There may be documents and other materials in the possession of the Government not subject to Rule 16. *No good reason appears to us why they may not be reached by subpoena under Rule 17(c) as long as they are evidentiary.* That is not to say that the materials thus subpoenaed must actually be used in evidence. It is only required that a good-faith effort be made to obtain evidence. * * * In short, any document or other materials, admissible as evidence, obtained by the Government by solicitation or voluntarily from third persons is subject to subpoena."[7]

In following the Bowman view which leads to the fullest presentation of facts and away from the notion of a trial as a game of combat by surprise,[8] we hold that the written statements of defendant and witnesses fall within Rule 17(c)'s ambit. The crucial sentence of the Rule provides that the court "may" direct production and permit inspection prior to trial of "books, *papers, documents,* or objects designated in the subpoena."[9] The words "papers" and "doc-

tion of other items sought in his subpoena duces tecum. We note these concessions without passing upon the validity of the reasons to support them.

Rule 16 of the Federal Rules of Criminal Procedure provides: "Upon motion of a defendant at any time after the filing of the indictment or information, the court may order the attorney for the government to permit the defendant to inspect and copy or photograph designated books, papers, documents or tangible objects, obtained from or belonging to the defendant or obtained from others by seizure or by process, upon a showing that the items sought may be material to the preparation of his defense and that the request is reasonable. The order shall specify the time, place and manner of making the inspection and of taking the copies or photographs and may prescribe such terms and conditions as are just."

4. 1951, 341 U.S. 214, 71 S.Ct. 675, 95 L. Ed. 879.

5. Id. 341 U.S. at page 220, 71 S.Ct. at page 679.

6. Ibid.

7. Id. 341 U.S. at pages 219–221, 71 S.Ct. at page 678 (emphasis supplied).

8. See United States v. Iozia, D.C.S.D.N.Y. 1952, 13 F.R.D. 335, where the court followed Bowman's other view. For a pre-Bowman view of 17(c)'s scope, see United States v. Maryland & Virginia Milk Pro. Ass'n, D.C.D.C.1949, 9 F.R.D. 509. And see Comment, Pre-Trial Disclosure in Criminal Cases, 60 Yale L.J. 626–46 (1951).

9. That sentence, as the court noted in United States v. Schneiderman, D.C.S.D. Cal.1952, 104 F.Supp. 405, 408, "appeared

uments" embrace the written statements sought by appellant.[10] And the defendant's statement, which was introduced in evidence, and statements by the witnesses, which might have been introduced for impeachment purposes, were clearly "evidentiary," as Bowman requires. But the same cannot be said of statements by "third persons" who are not otherwise identified. Such statements are not prima facie evidentiary. And appellant made no showing in his memorandum supporting his motion for inspection under 17(c) that those statements were "evidentiary."

Quashing the subpoena and thereby denying appellant an opportunity before trial to inspect statements by defendant and witnesses was error. If compliance would have been "unreasonable or oppressive"[11] or would have resulted in "a fishing expedition"[12] as to additional items sought but not now in issue, the trial court should have modified the subpoena to include only material within 17 (c)'s reach. No sound reasons were offered by the Government, and we can think of none, for precluding pre-trial inspection of such material. No objection was or could have been made to disclosing the identity of informants through such material.[13] The Government had already furnished appellant with a list of witnesses whose statements were sought.[14] No showing was made that appellant's request for his and witnesses' statements was "unreasonable or oppressive," or in furtherance of a "fishing expedition." Under these circumstances, it was error to deny pre-trial inspection of these papers.

However, the trial court's refusal to grant pre-trial inspection of defendant's statement was not prejudicial.[15] It

in the preliminary draft of the rules as the last sentence of proposed Rule 20(b), and the appended note of the Advisory Committee explains: 'The last sentence provides for a method by which the court may permit either side to inspect subpoenaed documents or objects under the supervision of the court. It is inserted *in the interests of fairness* and for the purpose of preventing delay during the trial, particularly in cases where numerous documents may have been subpoenaed.' Federal Rules of Criminal Procedure—Preliminary Draft, pp. 104–105, 107–108 (1943)." (Emphasis supplied.)

10. See Gordon v. United States, 1953, 344 U.S. 414, 418, 73 S.Ct. 369, where the Supreme Court includes written statements by a prosecution witness within the "ordinary meaning" of the word "document."

11. Rule 17(c) provides in pertinent part: "The court on motion made promptly may quash or modify the subpoena if compliance would be unreasonable or oppressive."

12. In Bowman, supra, 341 U.S. at page 221, 71 S.Ct. at page 679, the Supreme Court pointed out that courts "should, of course, be solicitous to protect against disclosures of the identity of informants, and the method, manner and circumstances of the Government's acquisition of the materials." Accordingly the Court held invalid a subpoena's catch-all clause "not intended to produce evidentiary materials but * * * merely [intended as] a fishing expedition to see what may turn up."

13. See ibid. and Gordon v. United States, supra, 344 U.S. at page 419, 73 S.Ct. 369; United States v. Schneiderman, D.C. S.D.Cal.1952, 104 F.Supp. 405, Id., 106 F.Supp. 731.

14. 18 U.S.C. § 3432 provides: "A person charged with treason or other capital offense shall at least three entire days before commencement of trial be furnished with a copy of the indictment and a list of the veniremen, and of the witnesses to be produced on the trial for proving the indictment, stating the place of abode of each venireman and witness."

15. See Christoffel v. United States, 1952, 91 U.S.App.D.C. 241, 200 F.2d 734, 740, *reversed in part on other grounds*, 1953, 345 U.S. 947, 73 S.Ct. 869, where this court said of a request under Rule 17(c) to see non-existent minutes of a meeting: "[T]o compel production in these circumstances would be to eliminate all discretion and to let formalism predominate. This is not required. Every subpoena duces tecum, in whatever terms and under any and all circumstances, need not be left unmodified."

For an interesting discussion of the desirability of allowing pre-trial inspection of a defendant's confession, see State v. Dorsey, 1945, 207 La. 928, 22 So.2d 273.

was urged that an examination of the statement would have aided a psychiatrist for the defense to determine appellant's mental capacity at the time the crime was committed. But the statement was introduced in evidence by the Government five days before the psychiatrist took the stand. This provided ample time for its inspection. Moreover, the psychiatrist testified that appellant was of unsound mind at the time the crime took place.

 Since the written statements of witnesses are not in the record, we cannot say whether the court's failure to order their production under 17(c) was prejudicial to appellant.[16] We think justice is best served by remanding this case to the District Court with instructions to order production of these statements for inspection by appellant, and to entertain a motion for a new trial if one is presented within five days thereafter. If upon hearing such motion, the court determines that appellant was prejudiced, it should grant a new trial; otherwise, its present judgment should stand.[17]

 At issue under the second allegation of error is whether appellant was prejudiced by instructions to the jury on the difference between second degree murder and manslaughter. The trial judge accurately stated the crucial difference between these homicides. He charged:

"Murder in the second degree is the unlawful killing of another, where there is not a premeditated design and plan to effect death, but where there is *malice* aforethought." [18]

and

"Manslaughter * * * is the unlawful killing of a human being *without malice*." [19]

Contrary to appellant's contention, we find in these instructions compliance with the principles enunciated by this court in Weakley v. United States.[20]

We have carefully considered other allegations of error and find them without merit.

Remanded with instructions to proceed in accordance with this opinion.

WILBUR K. MILLER, Circuit Judge (dissenting).

I do not agree with the court's interpretation of Rule 17(c) and therefore I think it unnecessary to remand the case to the District Court. I would affirm the judgment.

---

16. See Gordon v. United States, supra, 344 U.S. at page 420, 73 S.Ct. 369, 373, where the Supreme Court said: "[R]arely can the trial judge understandingly exercise his discretion to exclude a document which he has not seen, and no appellate court could rationally say whether the excluding of evidence unknown to the record was error, or, if so, was harmless. The question to be answered on an application for an order to produce is one of admissibility under traditional canons of evidence, and not whether exclusion might be overlooked as harmless error."

17. Absent an abuse of discretion, an order denying such motion will not be disturbed on appeal. Battle v. United States, 1953, — U.S.App.D.C. —, 206 F.2d 440 and cases cited therein at n. 4.

18. In defining *malice* the trial judge properly instructed: "Malice, in the eyes of the law, is a state of mind; it shows a heart fatally bent on mischief and unmindful of social duties. Malice, as the law knows it, may also be defined as a condition of mind that prompts a person to do an injurious act *wilfully* to the injury of another. Malice may be implied or inferred from the act committed, or it may be expressed." (Emphasis supplied.)

19. See Bishop v. United States, 1939, 71 App.D.C. 132, 107 F.2d 297.

20. 1952, 91 U.S.App.D.C. 8, 198 F.2d 940. The court found reversible error in an instruction to the jury which did not state accurately the difference between first and second degree murder.