**UNITED STATES of America,
Appellee,
v.
Dale McGRADY, Appellant.**

**No. 74–1133.**

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 10, 1974.

Decided Dec. 6, 1974.

Certiorari Denied March 17, 1975.

See 95 S.Ct. 1408.

Irvin B. Nodland, Bismarck, N. D., for appellant.

Gary Annear, Asst. U. S. Atty., Fargo, N. D., for appellee.

Before VAN OOSTERHOUT, Senior Circuit Judge, and HEANEY and STE-PHENSON, Circuit Judges.

HEANEY, Circuit Judge.

The appellant was convicted by a jury on three counts of violating 18 U.S.C. § 1163,[1] by converting or misapplying funds from the Community Action Program on the Fort Berthold Indian Reservation. He and seven other defendants were acquitted on numerous additional counts and on a general count of conspiracy. He contends on appeal: (1) that the District Court lacked subject matter jurisdiction; (2) that the complexity of the multiple-defendant, multiple-count conspiracy trial denied him a fair trial on the two factual situations for which he was found guilty; (3) that the evidence was insufficient to sustain the convictions; and (4) that numerous errors were committed by the trial court which individually denied his constitutional rights and collectively denied him a fair trial. We affirm.

## JURISDICTION

The appellant urges that the general criminal laws of the United States, including the section under which he was charged, do not apply to Indians committing crimes against Indians in Indian country. He relies on 18 U.S.C.

---

1. Section 1163 provides, in relevant part, for the punishment of anyone who:

 \* \* \* embezzles, steals, knowingly converts to his use or the use of another, willfully misapplies, or willfully permits to be misapplied, any of the moneys, funds, credits, goods, assets, or other property belonging to any Indian tribal organization \* \* \*.

§ 1152[2] to support this contention. We reject this reading of § 1152, for the reasons set forth in Stone v. United States of America, 506 F.2d 561 (8th Cir. 1974). As we stated there:

* * * The section refers only to those laws where the situs of the offense is an element of the crime. * * * The exemption [of § 1152] does not encompass the laws of the United States that make actions criminal wherever committed. * * *

Id. at 563. Accord, Walks on Top v. United States, 372 F.2d 422, 425 (9th Cir.), cert. denied, 389 U.S. 879, 88 S.Ct. 109, 19 L.Ed.2d 170 (1967). The statute under which the appellant was convicted makes certain actions criminal regardless of where they are committed. Consequently, the District Court had subject matter jurisdiction.

## SUFFICIENCY OF THE EVIDENCE AND DENIAL OF A FAIR TRIAL DUE TO THE COMPLEXITY OF THE INDICTMENT AND TRIAL

■ We discuss the appellant's second and third contentions together, since his argument that the evidence was insufficient to sustain a conviction on the three counts is closely related to his claim that he was denied a fair trial due to the multiple defendants, plethora of counts, and complexity of the issues. The gist of his latter claim is that, although the two factual situations for which he was convicted are relatively simple, his innocence on the three counts got lost in the avalanche of evidence on the other counts. We have examined the entire record carefully in light of this two-fold contention, viewing the evidence, as we must, in the light most favorable to the verdict, and accepting as established all reasonable inferences to support the con-

viction. See United States v. Simone, 495 F.2d 752, 753 (8th Cir. 1974); United States v. Henson, 456 F.2d 1045, 1045–1046 (8th Cir. 1972). We conclude that the evidence was sufficient to sustain the jury verdict of guilty on all three counts.

Under Counts 8 and 10, the appellant was convicted of violating § 1163 by paying $570 in rent to his landlady out of CAP funds by means of two separate checks. The evidence showed that the appellant was the Director of the Community Action Program (CAP). For seven months, commencing in July, 1971, he rented a house in New Town, North Dakota, at a rental of $190 per month. At the end of July, the appellant's landlady received from him a check drawn on the CAP account in the amount of $380, representing the first two months' rent. She also received a check from him in December in the amount of $190, again drawn on CAP funds. The voucher on the latter check indicated that it was for space, costs, and one month's rental. Such items were specifically not to be paid out of CAP funds derived from the federal government but were to be paid, if at all, by the Tribe. The evidence also tended to show that, contrary to the explanation given by the appellant, there were no CAP supplies being stored in the house which would justify the CAP expenditure. During a portion of the seven months, the appellant was simultaneously charging rent from third persons for staying in the house, receiving thereby a total of approximately $300. There was ample evidence from which the jury could conclude that the appellant had willfully misapplied CAP funds.

Under Count 11, the appellant was convicted of having misapplied or converted the sum of $2,233 to his own use.

---

**2.** Section 1152 provides:

Except as otherwise expressly provided by law, the general laws of the United States as to the punishment of offenses committed in any place within the sole and exclusive jurisdiction of the United States, except the District of Columbia, shall extend to the Indian country.

This section shall not extend to offenses committed by one Indian against the person or property of another Indian, nor to any Indian committing any offense in the Indian country who has been punished by the local law of the tribe, or to any case where, by treaty stipulations, the exclusive jurisdiction over such offenses is or may be secured to the Indian tribes respectively.

The evidence tended to show that CAP had advanced travel funds on behalf of an organization known as NAME and that, when NAME gave the appellant a check for $2,233 to reimburse CAP for that advancement, the appellant deposited the money in a newly opened personal bank account. There was also evidence that the funds from this check were used for the appellant's own personal affairs, and were not used in any way for the benefit of CAP or the Tribe. The appellant attempted to establish that he had returned an equivalent amount of cash to the CAP by delivering it in four envelopes to Mr. Leonard Hare, Jr., in a motel room meeting after the appellant had resigned his position as Director. Although Mr. Hare did testify that he had been at such a meeting, where he had been given some money in at least one envelope, he was unable to recall how many envelopes there were, how much money had been placed in them, what he had been told to do with them, or what he had in fact done with them. The jury could well have discounted the appellant's claim that the $2,233 had been returned, and concluded that he willfully converted this money to his own use.

■ After examining the record in its totality, we are left with the impression that the appellant was able to set forth fully all the facts concerning the rent and NAME incidents, and that the full story was placed before the jury for its deliberation. We cannot agree with the appellant that the case was so complex that the jury lost sight of the evidence on the three counts. Although there were additional counts, involving much factual detail about sloppy paperwork, failure to comply with regulations, and unauthorized trips at CAP expense, the facts on those counts were sufficiently distinct from the rent and NAME inci-

dents so that no blurring of events in the jurors' minds was likely. The evidence on the three guilty counts was clear, direct and strong. We conclude that the appellant was not denied a fair trial by the complexity of the indictment and trial.

## ALLEGATIONS OF ERROR BY THE TRIAL COURT

■ The appellant's list of trial court errors is a long one and requires extended discussion. First, he claims that he was not fairly or adequately advised of the nature of the charges, as required by the Sixth Amendment, but was affirmatively misled on that score. He contends that he was told that he was being charged with embezzlement and defended on that basis, only to have the government change its theory late in the trial, with the court's approval, to one of misapplying the funds. We find no merit in this contention. The appellant was charged with violating a statute which contains language proscribing misapplication of funds. Moreover, the indictment clearly sets forth the specific acts for which he was charged.

Second, the appellant contends that the trial court erred in its handling of a third-party subpoena *duces tecum* served upon CAP Director Nell Walker. Great quantities of materials were turned over to the appellant pursuant to this subpoena, including several cartons of CAP records. However, when Mrs. Walker sought to withhold some correspondence, the judge viewed those letters *in camera* and granted her request. The reasons given for the refusal to fully enforce the subpoena were that the material was cumulative and sensitive.[3] The appellant urges that this ruling was erroneous and denied him his Sixth Amendment right to compulsory process.

---

3. The court stated:

Consideration of the correspondence as a group reflects the moral indignation of the faction which was critical of the administration of the CAP and, as such, would be inflammatory and, in the opinion of this Court, disclosure of the letters as a group

would just add to the disruptive situation on the Reservation, while disclosing no new facts either involving these criminal proceedings or involving other alleged misconduct that have not already been disclosed * * *.

A subpoena *duces tecum* issued pursuant to Federal Rule of Criminal Procedure 17(c) may be quashed if production would be "unreasonable or oppressive," Bowman Dairy Co. v. United States, 341 U.S. 214, 220 n. 5, 71 S.Ct. 675, 95 L.Ed. 879 (1951), or if it seeks irrelevant or privileged matter. *See,* 1 Wright, Federal Practice & Procedure (Criminal) § 275 (1969). Moreover, the trial court can refuse to enforce the subpoena *before* trial if the moving party fails to demonstrate a need for the material at that point in the proceedings. *See,* United States v. Nixon, 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039, 1059 (1974); United States v. Iozia, 13 F.R.D. 335, 338 (S.D.N.Y.1952). The decision of whether or not to quash on these grounds is a matter within the discretion of the trial judge. *See,* United States v. Nixon, *supra* 94 S.Ct. 3090, 41 L.Ed.2d at 1060; United States v. Bearden, 423 F.2d 805, 809–810 (5th Cir.), cert. denied, 400 U.S. 836, 91 S.Ct. 73, 27 L.Ed.2d 68 (1970). The problem here is that the trial court did not give any of these reasons for its ruling. Thus, the question is whether a court may withhold subpoenaed material in a criminal case entirely on the grounds that it is cumulative or inflammatory.

We do not believe that nonprivileged matter can be withheld by third parties in a criminal action solely on grounds of sensitivity. Nor do we believe that this order denying disclosure may be upheld on the ground that the correspondence subpoenaed was cumulative. While the court has wide discretion in excluding proffered evidence *at trial* on the ground that it is merely cumulative, we find no authority for the proposition that it may quash a subpoena *duces tecum* in a criminal case on that ground. The court conceded in its order that at least some of the correspondence was relevant. Given that fact, the appellant ought to have been given the opportunity to examine the material himself to see if it was truly cumulative. We conclude, therefore, that the court erred in denying the appellant the *in camera* material for the reasons which it gave.[4] *See,* Bowman Dairy Co. v. United States, *supra* 341 U.S. at 220–221, 71 S.Ct. 675. There remains, however, the question of whether the error was prejudicial.

We have examined the sealed *in camera* material carefully, in light of the entire record, and have concluded beyond a reasonable doubt that the error in quashing a portion of the subpoena was "harmless error" under the rule of Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).[5] A great deal of the correspondence is clearly irrelevant, and the trial judge could have withheld it on that ground. Moreover, the defendants had been supplied with large quantities of material from the CAP offices and, from our reading of the record, everything in the *in camera* material which had relevance was cumulative of evidence adduced at trial.

---

**4.** The trial judge was faced with a difficult issue when Mrs. Walker tearfully pleaded for the withholding of the correspondence, asserting that she had been assaulted and threatened on the reservation. The court explained that it perceived the issue as one requiring a balancing of the rights of the witness against the rights of the defendants, and the court expressed concern for the witness's safety. Judge Van Sickle is to be commended on his patient and careful handling of a difficult trial.

**5.** In reaching this conclusion, we have assumed that the constitutional right to compulsory process is involved, even though the Sixth Amendment speaks only of the right to compel the production of witnesses, rather than documents. It has been held that "[t]his constitutional mandate extends to documentary as well as oral evidence." United States v. Schneiderman, 106 F.Supp. 731, 735 (S.D.Cal. 1952), aff'd sub nom., Yates v. United States, 225 F.2d 146 (9th Cir. 1955). *See also,* Myers v. Frye, 401 F.2d 18, 21 (7th Cir. 1968); United States v. Burr, 25 Fed.Cas. p. 187 (No. 14,694) (CCD Va.1807). This constitutional right, however, whether involving witnesses or documents, has never been an absolute one. Often it has been required to give way in the face of competing policies of privilege and admissibility. *See,* United States v. Schneiderman, *supra* 106 F.Supp. at 736; United States v. Iozia, 13 F.R.D. 335, 338 (S.D.N.Y.1952).

Hence, had the court excluded the correspondence at trial as cumulative, there would have been no abuse of discretion. Under these circumstances, as in Mackey v. United States, 122 U.S.App.D.C. 97, 351 F.2d 794 (1965), and Phillips v. Tollett, 330 F.Supp. 776, 779 (E.D.Tenn. 1971), the erroneous curtailment on the appellant's right to compulsory process does not require reversal.

 Third, the appellant contends that it was error for the court to permit the prosecutors to introduce evidence, going outside of the indictment, of prior misconduct by the appellant. Specifically, they introduced exhibits indicating that the appellant had submitted duplicate claims for travel expenses, wherein he sought reimbursement for travel allegedly taking place in two different places at the same time. Evidence of prior misconduct is admissible when relevant to prove one of the following: (1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other; and (5) identity. See, Love v. United States, 386 F.2d 260, 266 (8th Cir. 1967), cert. denied, 390 U.S. 985, 88 S.Ct. 1111, 19 L.Ed.2d 1286 (1968). The government claimed that the evidence was admissible on all grounds but the last one, and the trial court admitted it on the first three grounds. We have misgivings about the propriety of this ruling. Had the indictment been limited to the three counts on which the appellant was convicted, it would be difficult to justify admission of the evidence on any of the above grounds. And even given the other counts involving similar misconduct, it does not seem appropriate to us to allow the government to inject evidence of further misconduct into the record; the trial was already complex, and there was

no reason to require the appellant to rebut any more than the thirteen counts already formally charged. Nevertheless, we are satisfied that any error in admitting this evidence did not "affect the substantial rights of the parties," 28 U.S.C. § 2111, and was therefore, harmless error. See, Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946). The appellant was acquitted on all counts involving conduct similar to that set forth by the contested evidence.[6]

Fourth, the appellant claims prejudice because of two trial court rulings at the close of the government's case which had the effect of denying to the appellant the benefit of the testimony of a co-defendant, Mr. Robert Bell. These rulings were a denial of Mr. Bell's motion to dismiss and a denial of his motion to rest his case and go to the jury at that point. The appellant claims that he was prejudiced because Mr. Bell may have been able to explain what happened to at least part of the $2,233 travel reimbursement, and Mr. Bell's counsel stated that he was not willing to take the stand while he was still in jeopardy.

 As to the motion for dismissal, the appellant contends that to deny the motion was error because there was a total absence of proof against Mr. Bell. We disagree. There was ample evidence, particularly on Count IV, upon which a jury verdict of guilty against Mr. Bell could have been sustained. The government had produced evidence tending to show that Mr. Bell was paid $400 out of CAP funds for allegedly performing work for or selling materials to the Sheltered Industries Program; that there was no proof that the $400 had been earned; that the Director of the Alcohol Program did not know of any grounds for such payment; that the Sheltered Industries Program was not in

---

6. The appellant further argues that we should adopt the rule of State v. Spreigl, 272 Minn. 488, 139 N.W.2d 167 (1965), excluding such evidence unless the prosecutor has notified the defendant in writing within a reasonable time before trial of his intention to use it. That contention was raised and rejected by this Court in McConkey v. United States, 444 F.2d 788, 790 (8th Cir.), cert. denied, 404 U.S. 885, 92 S.Ct. 223, 30 L.Ed.2d 168 (1971).

operation until after the payment; and that Mr. Bell was ineligible to work for CAP or receive any payment from CAP because he was a member of the Tribal Council.

■ The appellant's alternate contention that Mr. Bell ought to have been permitted to rest his case, which would have required a severance, is similarly without merit. The *appellant* never sought a severance, and Mr. Bell did not request one until the close of the government's case. At that point, the appellant's counsel vigorously objected to the only two means whereby that goal could have been obtained.[7] To accept the appellant's contention now would be to impose an intolerable rule under which the trial court would be reversed regardless of how it handled the severance motion of the co-defendant. We will not do this. The question of severance of co-defendants is a matter within the discretion of the trial court. *See,* Opper v. United States, 348 U.S. 84, 95, 75 S.Ct. 158, 99 L.Ed. 101 (1954); Williams v. United States, 416 F.2d 1064, 1070 (8th Cir. 1969). In exercising that discretion, it must balance the expense and inconvenience to the government of separate trials against the prejudice to the defendants which is always a danger in joint trials. *See,* 1 Wright, *supra* at § 223. The government's interest is particularly compelling where no defendant moves for severance until the prosecution has rested its case and 1400 pages of testimony has been taken. *See,* Mee v. United States, 316 F.2d 467, 470 (8th Cir. 1963), cert. denied, 377 U.S. 997, 84 S.Ct. 1923, 12 L.Ed.2d 1049 (1964); Pummill v. United States, 297 F.2d 34, 36 (8th Cir. 1961) (defendant has an obligation to make a timely motion for severance). Therefore, even if the appellant has standing to complain, and even if he is not estopped by his opposition to severance at trial, we find no abuse of discretion here.

■ Fifth, the appellant contends that prejudicial error occurred when the prosecutor referred to the fact that a Grand Jury had determined that the defendants should stand trial.[8] The appel-

7. One defense attorney moved to sever the cases of four defendants, including Mr. Bell, to permit them to rest. The court's dilemma, and the appellant's objection to such severance is demonstrated in the following dialogue:

> THE COURT: * * * You just threw me a left hook that really has me bouncing. That would mean I would have to dismiss without prejudice as to the other Defendants to use the jury on these five [sic] Defendants. An alternative would be * * * to instruct as to the case at this stage on these five [sic] Defendants. Send the jury in, have them make a decision, and when they have completed the decision, have them come back out and consider additional evidence and decide the other * * * cases.
>
> * * * * * *
>
> MR. NODLAND [Counsel for McGrady]: I very much appreciate Mr. Tupper's motion, but feel that the prejudicial effect of the second suggestion of the Court would be overwhelming and uncorrectable. * * * [T]he jury would be going into the jury room and discussing the case—something that they've been admonished for three weeks not to do. As far as my clients are concerned * * * I think that it's terribly prejudicial to my clients.
>
> * * * * * *
>
> Your Honor, I have one other comment that I think, at least, I want the Court to take into consideration. * * * [W]e have a fantastic amount of time and money tied up. We're here. We want to go forward and we want to try our case. We want to complete it to this jury.

8. Mr. Peterson argued as follows:

> Mr. Tupper says it is easy to charge defendants with criminal acts. It is not as easy apparently as Mr. Tupper thinks it is. There are certain procedures that are involved in charging an individual. It is not * * * the * * * members of our office staff that sit down and decide one day that we don't feel that we've got enough to do in the office, so we better figure out a few more charges and a few more defendants to bring in. These things are brought before a Grand Jury. It is required under the Constitution that a Grand Jury indict an individual, and they are the ones that are making the charges. We are the ones that are presenting the evidence to you for your determination as

lant's attorney objected to the argument and the trial court denied a motion for a mistrial on that ground. The prosecutor justifies the remarks by stating that another defendant's counsel invited the argument by asserting that it is "easy to charge" people with criminal acts. Notwithstanding the context of the prosecutor's remarks, we have misgivings as to their propriety. Nevertheless, we are satisfied that the references had no influence on the jury, and that the appellant was not denied a fair trial because of them. *See,* United States v. Williams, 502 F.2d 581, 584 (8th Cir. 1974); Isaacs v. United States, 301 F.2d 706, 736–737 (8th Cir.), cert. denied, 371 U.S. 818, 83 S.Ct. 32, 9 L.Ed.2d 58 (1962). This is particularly true as the jury was instructed at the time the case was given to it that the indictment was but an accusation and was not evidence.

We find no merit to the appellant's final three claims of trial court error. It was within the trial court's discretion to permit two government attorneys to make final argument in this long and complex trial. The form of the verdict was an appropriate one, since where there are separate counts in an indictment, there must be separate verdicts by the jury as to the guilt or innocence of each defendant on each count. *See,* United States v. Crescent-Kelvan Co., 164 F.2d 582, 589 (3rd Cir. 1948). The trial court did not abuse its discretion by sending a copy of the indictment into the jury room in view of the fact that he warned the jury that it was not evidence of any kind, but only an accusation. *See,* United States v. Warner, 428 F.2d 730, 736 (8th Cir.), cert. denied, 400 U.S. 930, 91 S.Ct. 194, 27 L.Ed.2d 191 (1970).

Affirmed.

to whether or not they are guilty of the charges beyond a reasonable doubt. So it's not a situation where we just sit down and say "Hey, you and you and you and you are going to answer to the Federal Courts today." That's not it at all.