## COMMONWEALTH *vs.* JAMES FOX.

A paper, signed with the mark of a witness who cannot read or write, when produced at a trial as a memorandum to refresh his recollection, is not to be read to him in the presence of the jury; but the witness is to withdraw with one of the counsel on each side, and have it read to him by them, without comment.

Acts which hasten the death of a woman, already suffering with a disease of which she must probably have soon died, may be laid, in an indictment for hei murder, as the sole cause of her death, without mentioning the disease.

Evidence of an assault with the hands and feet only, hastening the death of a woman enfeebled by disease, whom the offender knew or had reasonable cause to believe to be in such a feeble condition that the attack would end her life, or inflict great bodily harm, or hasten her death, is proof of implied malice, which will warrant a conviction of murder. Otherwise, if the criminal had not such knowledge or reasonable cause of belief.

THE defendant was indicted for the murder of Ellen Fox, his wife, and was tried on the 6th of January 1857, before Justices Metcalf, Bigelow and Merrick.

The indictment charged him with murdering his wife by assaulting and beating her, throwing her down upon the floor, and with his hands and feet striking, kicking and bruising her. The evidence tended to show that the wife, at the time of the assault, was suffering severely with lung fever, of which she must probably have died in a short time, if the assault had not been committed; but that the assault committed by the defendant hastened her death.

Margaret Hogan, who was unable to read or write, being called as a witness for the Commonwealth, omitted to state some facts to which she had testified at the coroner's inquest on the day after the alleged homicide. The attorney general, for the purpose of refreshing her recollection, offered to read her statement, as then reduced to writing by the coroner, and signed with the mark of the witness. *S. D. Parker & G. Sennott,* for the defendant, objected that the statement should not be read in the presence of the jury; because it could only be used as a memorandum to refresh the recollection of the witness. And so THE COURT ruled; and ordered that the witness should withdraw with one of the counsel on each side, and that the papei

should be read to her by them, without comment, and she should then return and proceed with her testimony.

In closing the case for the defendant, his counsel objected that there was a variance between the indictment and the proof, because the evidence showed that the death was not occasioned by the assault alone, but that it was the disease of the wife, which made the assault mortal; and that the fact that she was diseased at the time of the assault should therefore have been averred in the indictment.

The defendant's counsel also contended that the assault, having been made without a deadly weapon, with the defendant's hands and feet only, was not calculated to do great bodily harm, and that therefore malice could not be implied, and, in the absence of proof of express malice, the defendant could, at most, be convicted only of manslaughter.

On these points the jury were instructed as follows, in the charge delivered by

Bigelow, J. It is necessary that the criminal act, with which the defendant is charged, should be set out and described in the indictment in clear, formal and distinct terms, and that the proof should correspond with and support the allegations in the indictment. This is necessary, in order that the prisoner may understand the precise nature and character of the criminal act with which he is charged, and be prepared to meet it at the trial. In indictments for homicide, it is always essential to aver the mode or means by which life was taken, and to prove substantially that the criminal act was in fact committed as alleged. In the present case, this rule of law will be sufficiently complied with, and there will be no variance between the allegations and proof, if the jury are satisfied, on the evidence, that an assault and battery were committed on the deceased by the prisoner with his hands and feet in the manner charged in the indictment, and that thereby the death of his wife was hastened, so that it took place sooner by reason of the assault and battery than it would have occurred in consequence of her sickness alone. In such case, the assault and battery were the efficient cause of death. As death is appointed to all the living, and

must come to all sooner or later, every act of homicide only hastens the inevitable event. The law therefore does not permit a party charged with murder to speculate on the chances of the life of his victim, or to endeavor to apportion his own wicked act by dividing its effects with the operation of natural causes on the body of the deceased. If such a defence were permitted, it would be impossible, in any case, to say with certainty that some fatal accident or sudden stroke of disease might not have terminated the life of the deceased in a few hours, or even min utes, if the homicidal act had not been committed. If then this indictment sets out in full and distinct terms the acts of the prisoner which hastened the death of the deceased, it alleges sufficiently the means or mode in which the homicide was committed, without averring the state or condition of the body of the deceased at the time the assault and battery were committed, or the causes, merely natural, then existing, which tended to make the acts of the prisoner more dangerous and fatal. In weighing the evidence on this part of the case, the jury, in order to convict the prisoner, must be satisfied beyond a reasonable doubt that the death of his wife, at the time it occurred, would not have happened but for the assault and battery by him as charged in the indictment. If it is left in doubt, on the testimony, whether death, when it happened, was caused by the disease, or the violence inflicted on the deceased by the prisoner, he is entitled to an acquittal. [*Rex* v. *Webb*, 1 M. & Rob. 405, and 2 Lewin, 213.]

The court cannot sustain the broad proposition laid down by the counsel for the prisoner, that, in the absence of all evidence of express malice, there is no aspect of this case which will authorize the jury to convict the prisoner of murder. It is undoubtedly true that in many cases, in order to prove implied malice in the sense in which that term is understood in the law, it is necessary to prove that the act of homicide was committed by the use of a weapon or instrument calculated to take life or inflict grievous bodily harm. As a party is held legally responsible for the natural or necessary consequences of his own unlawful act, the law implies malice, where the circumstances of

the homicide are such as to show that the act proceeded from an evil disposition, or a mind and heart regardless of social duty and fatally bent on mischief. This is proved, in many cases, by the use of weapons or other means which necessarily endanger life. But where death ensues from acts or means which. under the circumstances, could not have been supposed to endanger life or to inflict great bodily injury, the law will not imply malice, because it cannot be reasonably inferred that the party charged intended the consequences which flowed from his act. If therefore death should ensue from an attack made with the hands and feet only, on a person of mature years and in full health and strength, the law would not imply malice, because ordinarily death would not be caused by the use of such means. But the inference would be quite different if the same assault and battery were committed on an infant of tender years, or upon a person enfeebled by old age or worn out with disease. In such cases, the circumstances under which the act was committed would show a disposition quite as evil and malignant, and the use of means calculated to inflict as grievous bodily harm, as the employment of deadly weapons on a person in the full possession of his health and strength. So it has been held, that the wilful exposure of a person laboring under sickness to severe cold, whereby his disease was aggravated and death was occasioned, would be evidence of implied malice sufficient to warrant a conviction of murder. [1 Hawk. *c.* 3, §§ 4, 5.] In like manner, a slight blow on the head of a new-born infant, which, if inflicted on an adult, would be harmless, but which necessarily would endanger the life and actually caused the death of the child, is proof upon which a jury might well find a party guilty of murder. The real question is, whether the circumstances of the homicide are such as to satisfy the jury that the party charged acted from an unlawful and evil design with an intent to do grievous bodily harm, and that his acts were of a nature calculated to endanger life. From such acts the law will imply malice.

In the present case therefore, if the evidence satisfies the jury that the prisoner, at the time he committed the assault and bat-

Commonwealth *v.* Fox.

tery on the deceased, knew or had reasonable cause to believe that she was sick and suffering from disease, and was thereby put in such a weak and feeble condition that his attack would endanger her life, or inflict on her great bodily harm, or hasten her death, it would justify the jury in finding implied malice, and convicting the prisoner of murder. But if he was not aware of her sickness, and had no reason to suppose that his acts would do her material injury, or any harm beyond that which would be occasioned by similar acts to a person in health, there would be no sufficient evidence of implied malice ; and although the acts of the prisoner hastened the death of his wife, he could be convicted of manslaughter only. [*Macklin's case*, 2 Lewin, 225. 1 East P. C. 344.] *Verdict, guilty of manslaughter.*