**Robert L. LOGAN, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 21612.**

United States Court of Appeals
District of Columbia Circuit.

Argued Sept. 19, 1968.

Decided Dec. 10, 1968.

As Amended April 16, 1969.

Mr. Albert H. Greene, Washington, D. C., (appointed by this court) for appellant. Mr. George E. Allen, Washington, D. C., (appointed by this court) was on the brief, for appellant.

Mr. Clarence A. Jacobson, Asst. U. S. Atty., with whom Messrs. David G. Bress, U. S. Atty., Frank Q. Nebeker and Earl J. Silbert, Asst. U. S. Attys., were on the brief for appellee.

Before WILBUR K. MILLER, Senior Circuit Judge, and DANAHER and TAMM, Circuit Judges.

DANAHER, Circuit Judge:

Convicted of murder in the second degree,[1] the appellant here contends that

---

1. The indictment drawn under D.C.CODE § 22–2403 (1967), charged in pertinent part that "on or about December 25, 1966, within the District of Columbia, Robert L. Logan, with malice aforethought, did strike Evelyn Sockwell with

the trial judge erred in his instructions to the jury. We have carefully considered his contentions in light of the record and find no error.

Officer Camp testified that Logan on December 25, 1966 a 5:20 A.M. came to the precinct and stated "I think I killed my wife." Officer McFarland was then summoned. In Logan's presence, according to McFarland's testimony, "Officer Camp informed me that this gentleman came in and that his wife was deceased, and told us to go along with him to their place of residence." Logan unlocked the door of his apartment where the lifeless body of the victim[2] was found on a bed. After performing an autopsy about 1 P.M. on December 25, 1966, the coroner concluded that the cause of death was a large blood clot over the right side of the brain between the skull and the surface of the brain. The coroner explained that the usual cause of such an injury is a blow of force to the head which moves the brain so that the vessels tear and bleeding results.

The doctor also perceived a bruise over one eye, a bruise in the back of the scalp, bruises about the arms and abrasions on one arm. The clotting, the doctor explained, was about an inch in thickness and had occurred within one to three days of the time of his examination. By way of answer to each of a series of questions concerning the possible cause of death, the witness explained that the results he discerned could have stemmed from a kick, a fall, a jarring or a slap, "some hard blow."[3]

The record discloses that off and on throughout December 24, 1966, this appellant had administered a series of brutal beatings to the victim. He had sought to still her complaints to neighbors and visitors to the apartment concerning his treatment of her. He was determined, the jury could have found, to use whatever force was necessary to achieve his purpose. As she lay on the floor following one attack, the appellant wearing shoes of a type commonly worn by construction workers,[4] had kicked her at least three times about the body, the shoulders and even about the head. There was ample evidence to establish that Logan's willful and malicious actions had caused the wife's death.

Such was the background, including a summary of the salient facts, respecting which the judge had outlined the elements of murder in the second degree.[5] He emphasized that an essential ingredient of that crime is malice aforethought. At the conclusion of the charge the judge made clear that the possible verdicts in the case were:

> Guilty as charged, namely, guilty of second degree murder; or if you reach the lesser included offense of manslaughter, two, guilty of manslaughter, or three: Not guilty.

Emphasizing that the verdict in any event must be unanimous, he asked if respective counsel had anything to add, and both replied "No, Your honor."

Appellant has asked us to find plain error under Fed.R.Crim.P. 52(b), but we decline to do so. His contentions are

---

his hands and kick her with his shod feet, causing injuries from which the said Evelyn Sockwell did die on or about December 25, 1966."

2. Variously referred to as Miss or Mrs. Sockwell and also as Logan's "wife," we will adopt the appellation "wife."

3. The wife was said to have been an epileptic, but the doctor "could find no positive evidence of epilepsy." He did discover that she had been suffering from sclerosis of the liver which, however, was not "the cause of death in this case." Appellant here has raised no issue respecting causation.

4. We have held that kicking with shod feet can constitute an assault with a dangerous weapon. Medlin v. United States, 93 U.S.App.D.C. 64, 207 F.2d 33 (1953).

5. D.C.Code § 22–2403 (1967) pertinently provides:
    Whoever with malice aforethought * * * kills another, is guilty of murder in the second degree.
    Hansborough v. United States, 113 U.S. App.D.C. 392, 394, 308 F.2d 645, 647 (1962) ; Fryer v. United States, 93 U.S. App.D.C. 34, 207 F.2d 134, cert. denied, 346 U.S. 885, 74 S.Ct. 135, 98 L.Ed. 389 (1953).

twofold, the first involving the claim that the instruction respecting implied malice was inadequate; and the second, that the judge had given no instruction —although none was asked at trial—respecting involuntary manslaughter.

# I

While conceding that the instruction on malice was not "inherently erroneous," appellant argues that the instruction was not as "thorough" as should have been called for under the circumstances here. He contends that the trial judge had not adequately taken into account Logan's version of what had happened. The appellant admitted on the stand that he had perpetrated an assault, but one which was minor in character and not by itself[6] such as to disclose an intent to cause great or serious bodily harm.[7] He thus would say that malice may be inferred from the act of killing alone if—and only if—the natural and probable consequence of the act is death or great bodily injury.[8]

Correctly asserting that the commission of an act, the natural and probable consequences of which are less than death or great bodily harm does not imply malice, the appellant argues that under the instruction as given, the jury was permitted to infer the requisite malice even if the jury had accepted the appellant's version of the assault. But we think the trial judge had successfully imparted to the jury sufficient guidance for its consideration. The judge first explained:

> In its ordinary use in every day life the word malice would indicate a feeling of hatred or ill will toward another or feeling of hostility toward an individual. In its legal sense malice has a broader significance. It is a state of mind showing a heart regardless of social duty, a mind deliberately bent on mischief, a generally depraved wicked and malicious spirit. Malice, as the law knows it may be defined as a condition of mind which prompts a man to do a wrongful act wilfully, that is on purpose, to the injury of another or the intentional doing of a wrongful act toward another without justification or excuse. Malice may be either express or implied.[9]

We think it clear enough that we are not here concerned with express malice. Respecting implied malice, the judge went on to make clear that it must be such as may be inferred from the circumstances of the killing. It must be such as flows from an act which imports danger to another, done so wantonly as to manifest depravity of mind and disregard of human life. The judge continued:

> In determining whether a wrongful act is intentionally done and is therefore done of malice aforethought, you [10]

---

6. He thus distinguishes acts which are themselves inherently dangerous and so by their very nature will provide evidence that the accused had intended the natural and probable consequences of his wrong. See, e. g., Liggins v. United States, 54 App.D.C. 302, 297 F. 881 (1924); United States v. Edmonds, 63 F.Supp. 968 (D.D.C.1946).

7. He testified that on the morning of December 24th his wife had grabbed him by the collar and he sought to free himself. "I bit her on the arm and she did not turn loose and I slapped her on the face and she turned loose."

   Even as the appellant here has raised no issue as to causation in a medical sense, see note 3 supra, he concedes on brief that the trial judge had correctly instructed the jury on the law of criminal causation where an assault causes the death of a victim in a pre-existing weakened condition.

8. Among other cases, appellant has cited Commonwealth v. Fox, 73 Mass. 585 (1856); 22 A.L.R.2d 854 (1952).

9. See Fryer v. United States, supra note 5, 93 U.S.App.D.C. at 38 and n. 18, 207 F.2d at 138 and n. 18. Even an accidental or unintentional killing will constitute murder in the second degree if accompanied by malice. Lee v. United States, 72 App.D.C. 147, 149 and nn. 3 and 4, 112 F.2d 46, 48 and nn. 3 and 4 (1940).

[10]. Green v. United States, 132 U.S.App. D.C. 98, 405 F.2d 1368 (1968) held that language, similar in part, in combination with other erroneous instructions, consti-

should bear in mind that the intent may be deduced from all the circumstances, from the things said and from things done. The instrument or means by which a homicide has been accomplished is always to be taken into consideration in determining whether the act is criminal and in what degree.

The judge emphasized that if the jury should find that the Government had failed to prove beyond a reasonable doubt any one or more of the elements which he had carefully enumerated,

> then you cannot find this defendant guilty of second degree murder. If you find that the government has failed to prove either that this defendant slapped or kicked the decedent or that the deceased died of such wounds inflicted by the defendant, then you must find that the defendant is not guilty.

He concluded on that aspect of the case that if the Government had proved beyond a reasonable doubt that the appellant had indeed committed the acts disclosed by the evidence as a result of which the victim died, but that the Government had *failed*

> to prove the element of malice necessary to second degree murder, then you may consider whether the defendant is guilty of the lesser included offense of manslaughter.

It is difficult to perceive how the trial judge could more certainly have provided the jury with a basis for its understanding as to the elements of the offense and the Government's burden with respect to

the necessities of proof. The jury from the facts it must have found and from the inferences reasonably then to be deduced returned its verdict of guilty of murder in the second degree.

## II

Appellant additionally contends that when instructing upon the elements of the lesser included offense of manslaughter, the judge erred in defining only "voluntary" manslaughter, thus denying to the appellant an opportunity to have the jury find him guilty only of "involuntary" manslaughter. We note at once that our Code makes no distinction between voluntary and involuntary manslaughter. We next observe that in any event, no request had been made for an instruction as to involuntary manslaughter. Moreover, the appellant concedes that the "instruction was accurate in defining the elements of voluntary manslaughter." [11]

Yet he now argues that by the omission of a definition of "involuntary manslaughter," [12] the jury was precluded from rendering a verdict of involuntary manslaughter. We find no merit in this contention. In the first place, we have made it clear that unless there is a legal basis in the evidence for an instruction respecting a lesser included offense, it is error to submit the case to the jury on any such offense. [13] Moreover, the instruction as given was at least as favorable to the appellant as he was entitled to receive under the circumstances here disclosed. Finally, and critically, the

tuted plain error requiring reversal. Here, several important distinctions permit us to affirm.

*First,* no such combination of errors has been presented on the instant record. *Second,* by the very nature of the case, *Green* called for the "special care, independently of counsel, [which] has been traditionally the standard of review." *Id.* at 100, 405 F.2d at 1370. *Finally,* the context in which the instant instructions were given, including a careful and complete enumeration of the elements of malice, leaves scant opportunity for confusion on the part of the jury.

11. He cites for us Bishop v. United States, 71 App.D.C. 132, 107 F.2d 297 (1939).

12. Story v. United States, 57 App.D.C. 3, 16 F.2d 342, 53 A.L.R. 246 (1926), cert. denied, 274 U.S. 739, 47 S.Ct. 576, 71 L. Ed. 1318 (1927). There an automobile operated by an intoxicated driver had struck and killed the latter's drunken companion. The facts do not remotely resemble the circumstances here shown.

13. Hansborough v. United States, *supra* note 5, 113 U.S.App.D.C. at 394–395, 308 F.2d at 647–648 and cases cited.

trial judge quite properly emphasized that the essential distinction between murder and manslaughter is the presence or absence of malice.[14]

We have given extensive consideration to this case in view of the earnest efforts of counsel appointed by this court. We are satisfied that the case was fairly and properly tried, and certainly free from plain error under Rule 52(b).

The conviction must stand.

Affirmed.

14. *See* Fryer v. United States, *supra* note 5.