**UNITED STATES, Appellee,**

v.

**Joseph C. FRADY, Appellant.**

**No. 79–2356.**

United States Court of Appeals,
District of Columbia Circuit.

Argued June 13, 1980.

Decided Aug. 4, 1980.

Rehearing and Rehearing En Banc
Denied Oct. 22, 1980.

---

Kathleen Hamor * with whom Michael Geltner, Washington, D.C. (appointed by this Court), for appellant.

Joseph C. Frady, pro se, was on the brief.

Benjamin B. Sendor, Asst. U. S. Atty., Washington, D.C., for appellee. Charles F. C. Ruff, U. S. Atty., John A. Terry, Michael W. Farrell and Charles W. Brooks, Asst. U. S. Attys., Washington, D.C., were on the brief, for appellee.

Before McGOWAN and EDWARDS, Circuit Judges, and FRIEDMAN,** Chief Judge, United States Court of Claims.

Opinion for the court filed by Circuit Judge EDWARDS.

EDWARDS, Circuit Judge:

This case is an appeal from the trial court's denial of the appellant's motion under 28 U.S.C. § 2255 (1976) to overturn his murder conviction on the ground that the jury instructions on malice and specific intent were defective. Since we find that at least two of the instructions were in error, substantially affecting the factfinding process and possibly precluding the jury from considering a manslaughter verdict, we reverse and remand for further proceedings. However, because retrial after so many years may be difficult for either the Government or the appellant, if the Government consents, and the trial court considers it to be in the interest of justice after hearing from both parties, the trial judge may enter a judgment of manslaughter. See United States v. Wharton, 433 F.2d 451, 461 (D.C.Cir. 1970).

## I. BACKGROUND

Appellant, Joseph Frady, and a co–defendant, who is not a party to this appeal, were indicted in 1963 by a federal grand

---

* Student Counsel.

** Sitting by designation pursuant to 28 U.S.C. § 293(a) (1976).

jury for first degree murder, felony murder, and robbery. After a jury trial, they were convicted of first degree murder and robbery; however, both defendants were acquitted of felony murder. This court subsequently affirmed the appellant's conviction.[1] In the years that followed, the appellant filed numerous motions *pro se* to reduce his sentence.[2]

In September 1979, the appellant filed a motion under 28 U.S.C. § 2255 (1976) alleging that a jury instruction given at the original trial in 1963 were defective and thus denied him a fair trial. The trial judge denied the motion on the grounds that the appellant could have or did raise the issues in his direct appeal or in the various motions filed following his conviction.[3] Since we find that there was plain error in the jury instructions given at appellant's trial, and since we find that the erroneous instructions clearly prejudiced appellant's right to a fair trial, we hereby reverse and remand.

## II. THE JURY INSTRUCTIONS

■ The trial judge instructed the jury on each of the elements of first degree murder, second degree murder, and manslaughter. The elements of first degree murder include malice, specific intent, and premeditation; second degree murder is a killing done with malice but without premeditation; manslaughter includes all other unlawful killings done without malice.[4] Thus, malice is the element that distinguishes both degrees of murder from manslaughter.

The appellant claims that the jury instructions on malice were erroneous in two respects.[5] First, the trial judge equated specific intent with malice.[6] The effect of this instruction, according to the appellant, "was to take the case out of the category of manslaughter and place it in the category of murder." *Green v. United States (Green I)*, 405 F.2d 1368, 1370 (D.C.Cir. 1968). *See United States v. Perkins*, 498 F.2d 1054, 1058 (D.C.Cir. 1974) (condemning the same instruction). Second, the trial judge instructed the jury that "*the law infers or presumes from the use of such weapon* in the absence of explanatory or mitigating circumstances *the existence of the malice essential to culpable homicide*" (Tr. at 806).

---

1. The court, however, overturned the death sentence and imposed a life sentence in its place. *See Frady v. United States*, 348 F.2d 84 (D.C.Cir.) (*en banc*), *cert. denied*, 382 U.S. 909, 86 S.Ct. 247, 15 L.Ed.2d 160 (1965).

2. In 1965 the appellant filed four motions to vacate or reduce his sentence. The trial judge denied each of these motions. In 1974 the trial judge denied another motion to modify the sentence. In 1975 the appellant sought to set aside his conviction under 28 U.S.C. § 2255, alleging ineffective assistance of counsel. The trial court denied the motion and the appellant did not appeal the judgment. In 1976 the court denied another motion to reduce the sentence. In 1978 the appellant moved to vacate an illegal sentence. This court held that consecutive sentences for robbery and murder, in the context of this case, violated the ban on double jeopardy, and changed the sentences to run concurrently. *United States v. Frady*, 607 F.2d 383 (D.C.Cir. 1979).

3. As a preliminary matter, we note that there is absolutely no evidence in the record to support the finding of the trial judge that Frady raised the issue of erroneous jury instructions in any motions or appeals after his conviction.

4. In 1963, at the time when appellant was indicted, the D.C. Code defined first degree murder as a killing done "purposely, either of deliberate and premeditated malice or" during the commission of a felony. D.C. Code Ann. § 22–2401 (1973). The jury, however, acquitted Frady of felony murder.

   The Code defined second degree murder as a killing, excluding first degree murder, done with "malice aforethought." D.C. Code Ann. § 22–2403 (1973). Manslaughter is "the unlawful killing of a human being *without malice.*" *Fryer v. United States*, 207 F.2d 134, 138 (D.C. Cir.), *cert. denied*, 346 U.S. 885, 74 S.Ct. 135, 98 L.Ed. 389 (1953) (emphasis in original). *See United States v. Wharton*, 433 F.2d 451, 454 (D.C.Cir. 1970) (malice is "the sole element differentiating murder from manslaughter").

5. The Government does not dispute the contention that the jury instructions were erroneous.

6. In his instructions to the jury, the trial judge stated:

   In determining whether a wrongful act is intentionally done *and is therefore done with malice aforethought* . . . .

   Trial Transcript ("Tr.") at 806. (emphasis added).

(emphasis added). Appellant argues that this instruction, compelling the jury to presume malice, also prevented the jury from considering a verdict of manslaughter.

Beyond question, each of the cited instructions is erroneous. They are identical to the instructions given in *United States v. Wharton*, 433 F.2d 451 (D.C.Cir. 1970), and *Green v. United States (Green I)*, 405 F.2d 1368 (D.C.Cir. 1968), where this court found the use of the instructions to be reversible error.[7]

## III. STANDARD OF REVIEW

■ Because the appellant did not object at trial to the jury instructions here in question, we must first decide whether the errors in the instructions are of such magnitude that we can overlook what the Government claims to be his procedural default. At the outset, we note that this action is brought by a federal prisoner. Thus, problems of comity and federalism do not come into play in this matter.

*Davis v. United States*, 411 U.S. 233, 93 S.Ct. 1577, 36 L.Ed.2d 216 (1973), is the leading case dealing with the availability of collateral relief for federal prisoners who fail to raise objections at trial. Repudiat-

ing some of the broad language in *Fay v. Noia*, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), the Court in *Davis* held that a federal prisoner, challenging the racial composition of the grand jury that indicted him, must show *cause* for his failure to make a timely objection as required by Rule 12(b)(2) of the Federal Rules of Criminal Procedure.[8] This cause requirement is based on Rule 12(f), which provides that failure to raise objections "shall constitute waiver thereof, but the court for cause shown may grant relief from the waiver." The Supreme Court held that, absent cause, Rule 12(b)(2) precludes untimely challenges to grand jury arrays, even when such challenges are on constitutional grounds. 411 U.S. at 242, 93 S.Ct. at 1582.

The Court in *Davis* also held that both "the reasons for the Rule and the normal rules of statutory construction" require at least as strict a standard for collateral attacks as for direct appeals. *Id.* at 240–41, 93 S.Ct. at 1582. Thus, the Court concluded that to allow a less stringent standard for collateral attacks would "perversely negate the Rule's purpose by permitting an entirely different but much more liberal requirement of waiver in federal habeas proceedings." *Id.* at 242, 93 S.Ct. at 1582.

---

7. Apart from the two plainly erroneous instructions, the parties disagree as to whether a third instruction, dealing with specific intent, was also so erroneous and prejudicial as to require reversal of the appellant's conviction. On this point, the trial judge instructed the jury that
    A person is presumed to intend the natural [and] probable consequences of his act.
    (Tr. at 804). The trial judge subsequently repeated this instruction (Tr. at 806). The appellant contends that under the holding in *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), this instruction, given twice in this case, violated the Fourteenth Amendment.
    In *Sandstrom*, the Supreme Court held unanimously that a similar instruction—"[t]he law presumes that a person intends the ordinary consequences of his voluntary acts"—may lead the reasonable juror to conclude that the presumption is conclusive. Even if it were rebuttable, the presumption would impermissibly shift the burden of proof to the defendant. 442 U.S. at 515, 99 S.Ct. at 2458, citing *Wharton* and *Green I.*
    In *Sandstrom*, the Court also noted that the jurors "were not told . . . that they might

infer" specific intent. 442 U.S. at 515, 99 S.Ct. at 2454. In the present case, however, the judge instructed the jury that "you are not compelled to presume that he intended to kill from such acts but have the right to consider them in reaching a determination of his intent" (Tr. at 804). At another point, the trial judge said "the intent may be deduced from all the circumstances" (Tr. at 806). Thus, while a portion of the instructions on specific intent were clearly erroneous, they may have been sufficiently qualified by subsequent instructions to be free from taint. *See United States v. Green (Green II)*, 424 F.2d 912, 913 (D.C.Cir. 1970), *cert. denied*, 400 U.S. 997, 91 S.Ct. 473, 27 L.Ed.2d 447 (1971); *Belton v. United States*, 382 F.2d 150, 154 (D.C.Cir. 1967). Because of our disposition of this case, however, we need not decide this issue.

8. Rule 12(b)(2) provides in part:
    The following must be raised prior to trial:

    .    .    .    .    .

    (2) Defenses and objections based on defects in the indictment or information.

Following the analysis set forth in *Davis*, we turn to Rule 30 of the Federal Rules of Criminal Procedure, which provides that

> No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict.

Although it does not refer to *waiver* specifically, the general thrust of Rule 30 is to foreclose the appellant from raising objections to jury instructions on appeal unless the appellant objected to the instructions at trial.

Rule 30, however, must be read in conjunction with Rule 52(b), which provides that

> Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.

Under Rule 52(b), it is clear that an appellant is not automatically barred from objecting to jury instructions on appeal where no objection has been raised at trial. Indeed, it has been consistently held in this circuit that, even though no objection was raised at trial, appellants may raise certain errors on direct appeal. *See United States v. McClain*, 440 F.2d 241, 245 (D.C. Cir. 1971); *United States v. Williams*, 463 F.2d 958, 962 (D.C. Cir. 1972); *United States v. Alston*, 551 F.2d 315, 320–21 (D.C. Cir. 1976). We follow this line of authority in our consideration of this case.

Since, as the *Davis* court held, the standard for allowing a 28 U.S.C. § 2255 motion on an issue not raised at trial should be no less stringent than the standard in the Federal Rules of Criminal Procedure for review on direct appeal, we hold that the appropriate standard for review in this case is the *plain error* standard set forth in Rule 52(b).[9]

■ The Government also briefly argues that the trial court may dismiss a motion filed under section 2255 if the Government has been prejudiced in its ability to respond to the motion. Rule 9(a) of the Rules Governing Section 2255 Proceedings for the United States District Courts. First, we note that the District Court did not dismiss the appellant's petition for this reason. Second, we do not find that the Government is prejudiced in *responding to the motion*. On the contrary, since no evidentiary hearing is required to decide appellant's case, the Government is quite able to respond to the motion.

Third, Rule 9 also provides that the court cannot dismiss the motion if the "movant shows that it is based on grounds of which he could not have had knowledge by the exercise of reasonable diligence before the circumstances prejudicial to the government occurred." Even if the Government were prejudiced, the appellant, who has been incarcerated and without counsel since his conviction, was in no position to keep up with the changes in the law on the constitutionality of jury instructions. Thus we find that the trial court could not have dismissed the petition under Rule 9.

## IV. PLAIN ERROR AND THE MALICE INSTRUCTIONS

In several cases, this court has applied the plain error standard to appeals from convictions based on erroneous malice instructions. In *Belton v. United States*, 382 F.2d 150 (D.C. Cir. 1967), the trial court had instructed the jury that the law inferred malice from the use of a deadly weapon.[10] This court found no plain error and affirmed the conviction because of a conjunc-

---

**9.** Other circuits have used the plain error standard in reviewing 28 U.S.C. § 2255 motions attacking convictions based on faulty jury instructions. For example, in *Tallman v. United States*, 465 F.2d 282, 287 (7th Cir. 1972), the court held that it would allow collateral relief for erroneous jury instructions only if "the effect of a plain error was a miscarriage of justice."

Although we conclude that the result in this case would be the same under the "cause and

prejudice" standard set forth in *Davis*, we believe that under the rationale of *Davis* the "plain error" standard is the appropriate standard for review in this case. *See* note 17, *infra*.

**10.** The court in *Belton* did not give the additional erroneous instruction, given in the present case, equating malice with specific intent.

tion of factors. First, the error involved only a single phrase that, in context, was unlikely to mislead the jury. Second, the court in *Belton* reasoned that the jury's verdict of first degree murder necessarily implied a finding of premeditation and deliberation, which in turn meant that the jury found malice despite the faulty malice instruction. *See also Howard v. United States*, 389 F.2d 287, 291 (D.C. Cir. 1967) (affirming a second degree murder conviction, where the jury was given the same erroneous instruction as in *Belton*, on the grounds that the evidence of malice was strong and the error was partly cured by a subsequent instruction).

The holdings in *Belton* and *Howard* turned on "the over–all factual situations in those cases." *Green v. United States (Green I)*, 405 F.2d 1368, 1369 (D.C. Cir. 1968). In *Green I* the trial court gave both of the defective malice instructions that were given in the present case. On appeal, this court reversed the defendant's first degree murder conviction. The reversal in *Green I* was obviously militated by the multiple errors in the instructions give to the jury; in noting these errors, the court observed that

> we cannot know whether the jury were guided by the correct or the incorrect portion of the instructions.

*Id.* at 1370. In short, the court in *Green I* found that the instructional errors raised substantial doubts that the jury's finding of premeditation necessarily implied malice.

In *United States v. Wharton*, 433 F.2d 451 (D.C. Cir. 1970), this court reversed a second degree murder conviction when the trial judge had give both of the erroneous malice instructions that were given in *Green I* and in the present case.[11] The court in *Wharton* found "plain error" be-

cause the trial judge had issued two erroneous instructions and the evidence of malice was equivocal. The court thus concluded that it could not determine whether the jury found the defendant guilty of murder despite or because of the faulty instructions. *Id.* at 461.

We conclude that here also the trial judge committed plain error in issuing the two aforecited erroneous malice instructions. This conclusion is reinforced by the decision in *United States v. Green (Green II)*, 424 F.2d 912 (D.C. Cir. 1970), *cert. denied*, 400 U.S. 997, 91 S.Ct. 473, 27 L.Ed.2d 447 (1971), in which this court affirmed the defendant's conviction after retrial, even though the trial judge had given one of the erroneous malice instructions given in this case. The court expressly distinguished *Green II* from *Green I*, which had two erroneous instructions. *Id.* at 913. *See also Mitchell v. United States*, 434 F.2d 483, 488 (D.C. Cir.), *cert. denied*, 400 U.S 867, 91 S.Ct. 109, 27 L.Ed.2d 106 (1970) (noting that "the cumulative effect of two erroneous malice instructions" is absent and following the distinction set forth in *Green II*); *Logan v. United States*, 411 F.2d 679, 681 n.10 (D.C. Cir. 1968) (distinguishing *Green I* in part because it involved a "combination of errors").

In addition to the case law in this circuit, the facts in this case and the policies underlying Rules 30 and 52(b) support our conclusion that the trial judge committed plain error affecting the appellant's substantial rights. We reiterate that the instructions given by the trial judge may well have precluded the reasonable juror from considering manslaughter as a possible verdict. Were the evidence of malice overwhelming, the error might seem harmless. But here, the evidence of malice was equivocal.[12] Based on the verdict after trial, the jury obviously concluded that the robbery was

---

11. Judge Leventhal, who wrote *Belton*, concurred in *Wharton*. Judge Leventhal also wrote the opinion for the court in *United States v. Perkins*, 498 F.2d 1054 (D.C. Cir. 1974), in which the court, on direct appeal, reversed a second degree murder conviction predicated on two erroneous malice instructions. Although the opinion is silent on the point, the appellant apparently made the proper objection at trial.

12. *Wharton* requires the appellate court to consider "the probable impact, appraised realistically, of the particular instructional mistakes upon the jury's factfinding function." 433 F.2d at 457.

not part and parcel of the killing.[13] Moreover, the evidence at trial indicated that the appellant did not enter the victim's house armed; he killed the victim with a weapon of chance–a piece of furniture. A manslaughter verdict–a finding that the killing was without malice–would have been consistent with this evidence. Since the trial judge was apparently satisfied that the evidence in the record warranted a jury instruction on manslaughter, it would be anomalous for us to uphold a conviction that may well have resulted from instructions foreclosing the jury from considering the alternative charge of manslaughter.[14]

We reject the Government's contention at oral argument that the erroneous instruction on presuming malice from a weapon was sufficiently qualified by other instructions. In fact, the trial judge told the jury that the weapon "is always to be taken into consideration" (Tr. at 806). This instruction was followed immediately with the trial judge's contested statement that the law presumes malice from the use of a weapon. His instructions did not qualify that presumption.[15]

We also reject the Government's argument that, as in *Belton*, a finding of premeditation implies a finding of malice. Because the trial judge in this case compounded his errors by giving more than one plainly erroneous instruction, we are simply unable to tell whether the jury followed the correct or incorrect portion of the instructions. *See Green v. United States (Green I)*, 405 F.2d at 1370.

Under these circumstances, it can hardly be doubted that the appellant was denied a substantial right. Because of the equivocal evidence at trial, and in light of all the instructions, we find the appellant suffered prejudice from the faulty instructions given by the trial judge. *See United States v. Pinkney*, 551 F.2d 1241, 1245 (D.C. Cir. 1976) (plain error standard required the appellate court to consider the instructions as a whole and to review the record to see whether the appellant was prejudiced by the instructions). A clear miscarriage of justice has occurred if appellant was guilty of manslaughter but is now serving the penalty for murder. *See Bearden v. United States*, 403 F.2d 782, 787 (5th Cir. 1968), *cert. denied*, 393 U.S. 1111, 89 S.Ct. 920, 21 L.Ed.2d 808 (1969) (holding that Rule 30 does "not bar invocation of Rule 52(b) where instructions have resulted in a miscarriage of justice").

While the purpose of Rule 30 is to allow the trial judge to correct trial errors before the jury retires, *United States v. Williams*, 521 F.2d 950, 956(D.C. Cir. 1975), no legitimate purpose would be served by denying the appellant's 28 U.S.C. § 2255 motion in this case. At the time of his trial, the erroneous instructions were standard. Thus, appellant's counsel had every right to assume that any objection to the instructions would have been futile. To rule otherwise would be to suggest that trial counsel should object to *all* jury instructions in anticipation of changes in the constitutionality of jury instructions.[16] Such a suggestion borders on the absurd.

■ We must, therefore, look to Rule 52 (b) for guidance in this case. Rule 52(b) is designed to protect the criminal defendant and the integrity of the judicial process. *Herzog v. United States*, 235 F.2d 664, 666 (9th Cir.), *cert. denied*, 352 U.S. 844, 77 S.Ct. 54, 1 L.Ed.2d 59 (1956). The rule is properly invoked whenever an appellant's substantial rights to a fair trial, as here, are threatened. In the instant case, it is axiomatic

---

**13.** The jury convicted the appellant of robbery and murder, but acquitted him of felony murder. This certainly suggests that the jury was not convinced that the appellant entered the victim's house with an intention to rob him.

**14.** We note that no manslaughter instruction was given in *Belton*. *See* 382 F.2d at 155.

**15.** We also follow *Sandstrom, supra*, which held that erroneous instructions were not cured by instructions on reasonable doubt and the presumption of innocence. 442 U.S. at 518 n.7, 99 S.Ct. at 2456 n.7.

**16.** A separate issue here concerns whether the new rule, finding the instructions erroneous, should be applied retroactively. *See* section V, *infra*.

that the integrity of the judicial process will suffer if we refuse to review an appellant's claims when he may, in fact, have been convicted of the wrong crime.[17]

## V. RETROACTIVITY

■ The only remaining issue to be resolved here is whether the rule announced in *Wharton* and *Green I* should be applied retroactively in this case. We hold that it should.

The Supreme Court recently discussed the retroactivity of holdings declaring certain jury instructions violative of due process. In *Hankerson v. North Carolina*, 432 U.S. 233, 97 S.Ct. 2339, 53 L.Ed.2d 306 (1977), the Court held that its decision in *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), condemning instructions that created a presumption of malice, was to be applied to a defendant who had been convicted before the Court decided *Mullaney*.

Quoting previous cases, the Court in *Hankerson* noted that:

Where the major purpose of new constitutional doctrine is to overcome an aspect of the criminal trial that substantially impairs its truth–finding function and so

raises serious questions about the accuracy of guilty verdicts in past trials, the new rule has been given complete retroactive effect. Neither good–faith reliance by state or federal authorities on prior constitutional law or accepted practice, nor severe impact on the administration of justice has sufficed to require prospective application in these circumstances.

*Id.* at 241, 97 S.Ct. at 2344.

The *Mullaney* holding, eliminating the presumption of malice, is "designed to diminish the probability that an innocent person would be convicted and thus to overcome an aspect of a criminal trial that 'substantially impairs the truth–finding function.'" *Id.* at 242, 97 S.Ct. at 2344. The Court emphasized that the key elements of the test for retroactivity are that the error *substantially* impaired the truth–finding process, and that it raised *serious* questions about the accuracy of the guilty verdict. *Id.* at 243, 97 S.Ct. at 2345.

In *Hankerson*, the Court found that the *Mullaney* holding fit that test, for the instructions issued by the trial judge had shifted the burden of proof to the defendant.[18] The Court found this shift to violate

17. Parenthetically, we address the Government's contention that the proper standard for review in this case is the "cause and prejudice" standard set forth in *Davis, supra*. Even assuming that the *Davis* standard applied, we find that Frady has met that standard. This standard bars federal habeas corpus review of constitutional claims absent a showing of cause for noncompliance with the applicable procedural rule–in this case objection at trial to the jury instructions–and some showing of actual prejudice resulting from the alleged constitutional violation. *See also Francis v. Henderson*, 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976) (applying standard to state prisoner), and *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) (same).

There was sufficient *cause* for appellant's failure to object at trial to the jury instructions. It was not until four years after his conviction that the challenged malice instructions were found to be erroneous, requiring reversal. It is unrealistic to expect that counsel would have made the futile gesture of objecting to what, at that time, were standard instructions. As noted above, to require counsel to anticipate future constitutional rulings would encourage the

meaningless task of objecting to every instruction in order to protect the defendant's constitutional rights.

The Government's characterization of counsel's failure to object as a trial tactic is unpersuasive. Competent counsel will object to those instructions that he or she believes might be erroneous, whatever the theory of the case. Moreover, Frady's counsel on direct appeal, who was also the trial attorney, made no attempt to exploit his "mistake."

The appellant was plainly *prejudiced* by the instructions given by the trial judge. As mentioned above, the evidence of record was consistent with a finding of manslaughter. Had the jury been properly instructed on both malice and specific intent, we cannot say whether they would have reached the same result. As in *Wharton* and *Green I* the defendant here has suffered sufficient prejudice to warrant reversal of his conviction.

18. The state law in *Mullaney* presumed malice under certain circumstances, leaving it to the defendant to prove an absence of malice in order to secure a manslaughter rather than a murder conviction. 421 U.S. at 686, 95 S.Ct. at 1883.

the mandate of *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), that each element of a crime must be proved beyond a reasonable doubt. Here, too, as the Government conceded at oral argument, the presumption expressed in the malice instructions lightened the Government's burden of proof in its case against appellant. To the reasonable juror, the presumption in the present case may have been no less influential than the rebuttable presumption in *Hankerson*. Given the equivocal nature of the proof in this case, and the misleading instructions on malice, we find that the truth–finding function was substantially impaired, raising serious questions about the accuracy of the jury's verdict. Thus, we hold that the rules announced in *Wharton* and *Green I* must be given retroactive application in this case.[19]

The Government may have some concerns about the effect of this holding on the administration of justice. The Court in *Hankerson*, however, was quite clear that "the severe impact on the administration of justice" was not enough to "require prospective application" of the new rule when the other criteria for retroactivity have been met. 432 U.S. at 241, 243, 97 S.Ct. at 2344, 2345. Thus, while we recognize the Government's interest in the outcome of this case, we note that the appellant would be at least as prejudiced by the opposite outcome, for he has been denied the opportunity to be fully and fairly tried for manslaughter as well as murder.

## VI. CONCLUSION

The District Court's order denying the appellant's motion to vacate the sentence is reversed, and the case remanded to the District Court for a new trial on the first count of the indictment. Because retrial

---

**19.** Footnote 8 in *Hankerson* suggests that the Court's holding on retroactivity will not unduly burden the state courts since most defendants will not have objected to the instructions at trial, thus precluding them from raising the issue on appeal or in habeas corpus proceedings. However, the statement in this footnote is not inconsistent with the decision in this case. First, *Hankerson* involved an appeal from a denial of habeas corpus to a *state* pris-

after so many years may be difficult for either the Government or the appellant, if the Government consents and the trial court considers it to be in the interest of justice after hearing from both parties, the trial judge may enter a judgment of manslaughter. *See United States v. Wharton*, 433 F.2d 451, 461 (D.C. Cir. 1970).

*So ordered.*

## ON SUGGESTION FOR REHEARING EN BANC.

Before WRIGHT, Chief Judge, McGOWAN, TAMM, ROBINSON, MacKINNON, ROBB, WILKEY, WALD, MIKVA, EDWARDS and GINSBURG, Circuit Judges.

## ORDER

**PER CURIAM.**

The suggestion for rehearing *en banc*, filed by appellee having been transmitted to the full Court and a majority of the judges in regular active service not having voted in favor thereof, it is

ORDERED, by the Court, *en banc*, that appellee's aforesaid suggestion for rehearing *en banc* is denied.

## STATEMENT ON DENIAL OF REHEARING EN BANC

TAMM, MacKINNON, ROBB and WILKEY, Circuit Judges:

We would grant a rehearing *en banc* in *United States v. Frady (Frady III)*, 636 F.2d 506 (D.C.Cir. 1980), to ascertain whether the standard of judicial review upon collateral attack (under 28 U.S.C. § 2255 (1976)) of a criminal conviction was properly applied by the panel in *Frady III*. The panel set aside a sixteen–year–old convic-

---

oner. Properly, the Court was concerned about issues of comity and federalism that are not present in the instant case. Second, under the Federal Rules of Criminal Procedure, failure to object to jury instructions at trial only changes the standard of review to "plain error." *See* note 9, *supra*. As we have held in this opinion, the jury instructions in this case amounted to plain error.

tion for deliberate and premeditated, first–degree murder–a conviction which was affirmed fifteen years ago on direct appeal to this court sitting *en banc*, 348 F.2d 84 (D.C.Cir. 1965) (*en banc*) (one judge dissenting) [1] (*Frady* I), and for which certiorari was denied by the Supreme Court, 382 U.S. 909, 86 S.Ct. 247, 15 L.Ed.2d 160 (1965).

We submit that finality of criminal convictions where justice has been done is such a basic social interest that all judges must observe scrupulously and responsibly the substantial distinction between standards of direct and collateral review of criminal convictions. We believe it is manifest that a court should not *on collateral review* attack in isolation one aspect of a criminal trial and overturn a jury verdict (for which an appellate court *en banc* found there to be sufficient supporting evidence). A court must "view the [jury] charge itself as part of the whole trial," *United States v. Park*, 421 U.S. 658, 674, 95 S.Ct. 1903, 1912, 44 L.Ed.2d 489 (1975), to judge whether justice was served or disserved.

The facts in *Frady* are unpleasant: On 13 March 1963 the victim Bennett was unmercifully assaulted and murdered in his home. "His head had been caved in by several blows from a blunt instrument and a mixture of blood and brains was coming from the wounds. . . . One of the victim's eyes had been knocked from its socket and was lying on his cheek when the officers arrived." *Frady* I, *supra*, 348 F.2d at 100. This battering, mayhem, and murder needed ten minutes, during which time a neighbor summoned police. They arrived in time to see Frady and codefendant Gordon run from the house and into a waiting car. Frady and Gordon, covered with blood, were arrested shortly thereafter.

On trial this evidence–and other amplifying details as to motive, plan, and preparation–was sufficiently convincing for the jury to return a verdict of guilty on the greatest offense charged–first–degree, premeditated, deliberate murder–and to earn

Frady the death penalty, later set aside by a 4–3 vote in *Frady* I, *supra*. The prosecution's evidence proved Frady and Gordon were contract killers; the defense theory, at trial, disclaimed any responsibility or involvement. *The defense made no claim of self–defense or reduced culpability, but, rather, theorized that a third man was in fact the real murderer* and, the defendant did not himself testify, thus waiving any opportunity to give any support whatsoever, then or now, to a defense based on reduced culpability. *See* Brief for Appellee United States of America (*Frady* I, Nos. 18,357 & 18,358) at 10–13; Trial Transcript at 793–99.

Fourteen years after Frady's conviction was affirmed he challenged an instruction to the jury delivered by the trial judge. He predicated the asserted error in that part of the charge where the judge instructed that the law "infers or presumes" the "existence of the malice essential to culpable homicide" from the "use of [a deadly] weapon in the absence of explanatory or mitigating circumstances." (Trial Transcript at 806). The trial court instructed the jury also, of course, as to the meanings of premeditation and deliberation, and instructed that these two elements were prerequisite to a conviction for first–degree murder and must be found by the jury beyond any reasonable doubt. The jury handed in a verdict finding premeditation and deliberation–in other words, the jury went *far beyond* the "malice" essential to find a defendant guilty of a murder in any degree and actually found Frady guilty of first–degree premeditated and deliberate murder. This court *en banc* upheld the jury verdict of first–degree murder, holding the evidence legally sufficient to find murder in that degree.

Frady now claims, before the *Frady* III panel, that is, that the jury was denied the chance to reach a reduced culpability verdict, in other words, that a finding of manslaughter in lieu of murder was precluded. We note, as did the *Frady* III panel (At 508), that the elements of first–degree

---

1. Chief Judge Bazelon and Judges Miller, Fahy, Washington, Danaher, Bastian, Burger, and

McGowan concurred in affirming the first degree conviction. Only Judge Wright dissented.

murder include malice, specific intent, and premeditation; the elements of second–degree murder include malice but no premeditation; while manslaughter encompasses all other unlawful killings done without malice. So "malice" does segregate first– and second–degree murder categories from the category of manslaughter. "Malice" does not, however, distinguish between first– and second–degree murder–the jury reached a verdict of *first–degree murder*, finding *premeditation* and *intent. A verdict of manslaughter is inconceivable, especially when no defense theory turning on self–defense, reduced culpability, or extenuating circumstances was adduced as limiting the responsibility of the defendants. See United States v. Green (Green II), 424 F.2d 912, 913 (D.C.Cir.1970), cert. denied, 400 U.S. 997, 91 S.Ct. 473, 27 L.Ed.2d 447 (1971)* ("it is inconceivable that the jury that found the appellant guilty of deliberate and premeditated murder would have failed to find malice . . . .").

As the *Frady* III opinion outlines, the "malice" instruction was adjudged erroneous in subsequent (*i. e.*, post–*Frady*) decisions of this Circuit. The contention we make here in support of our position to grant the rehearing *en banc* imports absolutely no claim that the jury instruction regarding "malice" in *Frady* should now be deemed the current and proper standard. We only note that the cases (*e. g., United States v. Wharton*, 433 F.2d 451 (D.C.Cir. 1970); *Green v. United States (Green I)*, 405 F.2d 1368 (D.C.Cir.1968)), holding that instruction to be invalid were themselves all on *direct appeal* from guilty verdicts and not upon collateral attacks pressed years and years after trial.

Frady was represented at trial by an attorney. Counsel, in derogation of Fed.R. Crim.P. 30, never raised the issue of erroneous jury charge at trial or on direct appeal. No miscarriage of justice or prejudice to the defendant is apparent under these circumstances, as viewed by the jury finding first–degree murder and this court affirming that verdict. In *Frady* III the erroneous jury charge was considered in isolation from the trial as a whole and from justice in the end. *Frady* III was not an appeal; it was a collateral review whose purpose is to ensure against a fundamental miscarriage of justice and, therefore, should have focused on *all* evidence of guilt and the conduct of the trial as a whole before overturning a conviction, *see Wainwright v. Sykes*, 433 U.S. 72, 88–91, 97 S.Ct. 2497, 2507–2508, 53 L.Ed.2d 594 (1977); *Cupp v. Naughten*, 414 U.S. 141, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973). The Supreme Court in *Henderson v. Kibbe*, 431 U.S. 145, 154, 97 S.Ct. 1730, 1736, 52 L.Ed.2d 203 (1977), laid down the different and enhanced standard of error required to be proved:

> The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment [*see Sunal v. Large*, 332 U.S. 174, 178, 67 S.Ct. 1588, 1590, 91 L.Ed. 1982 (1947) (collateral attack will not serve as appeal for *federal* convictions)] is even greater than the showing required to establish plain error on direct appeal. The question in such a collateral proceeding is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process," *Cupp v. Naughten*, 414 U.S., at 147, [94 S.Ct., at 400], not merely whether "the instruction is undesirable, erroneous, or even 'universally condemned,' " *id.*, at 146 [94 S.Ct., at 400].

Regrettably, the panel in *Frady* III found it necessary to mischaracterize the proof in the record as "equivocal" in order to sustain its extraordinary result. "Equivocal" was not the way the first court and this court *en banc* (*Frady* I) saw it. Judge Miller, with whom joined Judges Bastian, Danaher, and Burger, writing in *Frady* I, stated:

> The court cannot set aside the verdict of the jury unless the evidence was insufficient to sustain it or unless prejudicial error occurred during the progress of the trial. From what has been said, *it is apparent that the evidence amply supported the verdict*; and there is no prejudicial error in the record. The able District Judge conducted the trial in exem-

plary fashion, and charged the jury in a manner which was beyond criticism. *The appellants had no real defense* and there is no real reason shown on appeal why they should not pay that penalty [*i. e.,* capital punishment] for their atrocious crime which the law provides and the jury imposed.

348 F.2d at 111 (emphasis added). On this point we suggest that the panel 15 years later (*Frady* III) is bound by our *en banc* decision and not free to redetermine on this collateral attack what was settled *en banc* on direct appeal. The evidence which this court sitting *en banc* found sufficient to support a verdict of first–degree murder simply cannot fairly be described as "equivocal." Judge McGowan, in *Frady* I, also "share[d] the view that the *convictions of appellants should be affirmed.*" 348 F.2d at 91. Whereas he could not approve the death penalty, this was, Judge McGowan said, "*not because I believe there were errors in the instructions....*" *Id.* (emphasis added).

One other mischaracterization of the record, important to the panel's line of reasoning, must be refuted. The opinion asserts: "Were the evidence of malice overwhelming, the error [in the instructions] might seem harmless. But here the evidence of malice was equivocal. Based on the verdict after trial, the jury obviously concluded that the robbery was not part and parcel of the killing [footnotes omitted]," citing in support of this that the jury acquitted Frady of felony murder. At 511.

Nowhere in the opinion does the panel mention that Frady had driven past the victim's house two separate times that day, nor that Frady's co–murderer, Gordon, had picked up a pair of gloves before entering the house, so that "[s]ignificantly, the murder weapon bore no fingerprints." 348 F.2d at 101 n. 3, and 103. And, as anyone familiar with trial instructions might guess, the jury's failure to convict on felony murder was *not* for lack of malice, as the panel implies, *but because the trial judge properly instructed the jury that it could not find the defendants guilty of both felony murder and first–degree premeditated murder* (Trial Transcript at 803). The verdict clearly reflected the jury's belief that Frady entered the house intending not to rob, but to kill, *i. e.,* that there was malice aplenty. There was malice and evidence so overwhelming as originally to justify imposing the death penalty. In light of the evidence it is inconceivable that the trial could have been fatally infected by two short phrases in the court's charge.

Using the standard of direct appeal instead of collateral review; ignoring the *en banc* decision of this court on direct appeal; mischaracterizing evidence this court had found to be clear, convincing and sufficient; misconstruing the jury's acquittal on the felony murder count; misinterpreting and misapplying recent Supreme Court cases on instructions, plain error, and retroactivity to be accorded; this panel of our court has managed to free at last a brutal contract killer originally thought worthy of the death penalty. The rest of the court should awake to what has taken place.